OPINION OF THE COURT
Ira Gammerman, J.
On November 24, 1992, the jury returned a verdict in favor of the infant plaintiff in this matter against all three defendants. The award included damages for pain and suffering, to date, of $2,000,000 and future damages, itemized as follows: medical expenses — $1,500,000 (for 65 years); physical, occupational and speech therapy — $1,000,000 (for 13 years); psychotherapy — $1,000,000 (for 15 years); supervisory or custodial expenses — $2,500,000 (for 50 years); lost earnings — $2,000,000 (for 40 years); pain and suffering — $5,000,000 (for 65 years).
With respect to the damages awarded, defendants moved to set aside as excessive the awards for pain and suffering, both past and future, totaling $5,500,000 and the awards for therapies totaling $2,000,000. Plaintiff moved to set aside the award for medical expenses as inadequate. Defendants also requested that the court take testimony with respect to collateral sources available for therapy and the amount to be deducted from the award for lost earnings because of taxes. Such testimony was taken and will be discussed when I deal with the issues relating to collateral sources.
The motions with respect to both excessiveness and inadequacy were granted, the court directing a new trial on those *421 damage issues unless the plaintiff stipulated to the following reduced amounts: $400,000 for physical, occupational and speech therapies; $480,000 for psychotherapy (the method by which these amounts were arrived at will be discussed later in this opinion); $500,000 for pain and suffering to date; $3,000,000 for future pain and suffering. Plaintiff so stipulated. With respect to the inadequate award for medical expenses the parties stipulated that such award be increased to $3,000,000. Although testimony was taken, as indicated above, on the effect of taxes, that issue was also resolved by stipulation, the parties agreeing to reduce the award for lost earnings to $1,500,000.

The Discount Rate:

[1]

The parties also reached agreement with respect to one additional issue which requires some discussion, that is the discount rate to be used in computing the present value of the future awards for the purpose of calculating the attorney’s fee. After the verdict was returned I advised counsel that a 6% discount rate would be employed in making the necessary calculations unless either party objected in which event testimony would be taken. The 6% rate represented an appropriate discount rate based on rates of interest prudent investments are earning at the present time. That this was an appropriate rate is borne out by the fact that on the date on which the motions were heard counsel indicated that they had agreed on a discount rate of 5.5%.
Thus, pursuant to the stipulations, and because no collateral sources were deducted from the reduced amounts for therapies (the reasons for this ruling will be discussed below), plaintiff’s revised award was $500,000 for pain and suffering to date and the following awards for future damages: medical expenses— $3,000,000; physical, occupational and speech therapies— $400,000; psychotherapy — $480,000; supervision — $2,500,000; lost earnings — $1,500,000; pain and suffering — $3,000,000.

Article 50-A Revisited:

The manner in which the $250,000 lump sum for future *422 damages is deducted from the future damages award was discussed in Ursini v Sussman (143 Misc 2d 727, supra) and will not be repeated here. Deducting a proportional amount of the $250,000 lump sum from the jury award for future damages (as modified by stipulation) results in the following: medical expenses — $2,930,000; physical, occupational and speech therapies — $392,500; psychotherapy — $470,000; supervision — $2,442,500; lost earnings — $1,465,000; pain and suffering —$2,930,000. As pointed out in Ursini (supra), to compute the attorney’s fee it is first necessary to determine the present value of annuity contracts that will pay the above amounts in periodic installments with each annual amount to be increased by 4% annually, compounded. Taking the first future award for the purposes of illustration, the first step is to divide $2,930,000 (the agreed future award for medical expenses less a proportional amount of the $250,000 lump sum) by 65, the number of years for which the jury made the award. The first periodic payment is, therefore, $45,076.92. Using 5.5% as the discount rate, the present value of an annuity that would make the required payments is $1,906,816. Making a similar but separate computation for each item of future damages and then adding those separate present values results in a total present value of all the annuities for future payments of $8,249,220. It is this figure that is used to compute the attorney’s fee.
In medical malpractice cases in which the attorney is retained after July 1, 1985, section 474-a of the Judiciary Law provides that such fee shall be no more than 30% of the first $250,000 recovered, 25% of the next $250,000, 20% of the next $500,000, 15% of the next $250,000, and 10% of any amount over $1,250,000. Thus, here, the total amount on which the attorney’s fee is to be computed is $750,000 (representing the reduced amount awarded for past pain and suffering and the $250,000 lump sum) plus $8,249,220 (the present value of the annuities) for a total of $8,999,220. Applying the Judiciary Law sliding scale to the total amount of the recovery results in a total attorney’s fee of $1,049,922 or a fee of approximately 11.67% of the total recovery. This attorney’s fee should be deducted equally from each item of the award. Employing the agreed upon award for medical expenses as an example, the attorney’s fee on the present value of that award is $222,525. That amount should be deducted from the full amount awarded for that item of damage (after deduction of a proportional amount of the $250,000 lump sum), not from the *423 present value of that award after discount. It is at this stage of the calculation that certain courts have been led into error. For example, in Frey v Smith & Sons (751 F Supp 1052) the court, in a very complicated manner, determined the present value of each periodic payment and then provided that the attorney receive one third of that present value and the plaintiff two thirds. The statute was similarly misinterpreted by the court in Smith v Professional Painting (Sup Ct, Richmond County, index No. 2786-87) in which, according to Schedule C attached to the memorandum decision of September 10, 1991, the court deducted the attorney’s fee not from the jury award but rather from the present value of that award to determine the annual periodic payments the plaintiff was to receive.
It has been observed, quite correctly, both by Judges and commentators that the periodic payment statute is not a model of clarity. But on this issue the language of the statute is clear. Subdivision (e) of both CPLR 5031 and 5041 provides that the present value of the annuity contract to provide for the payments which the plaintiff is to receive is to be computed after deduction of the attorney’s fee "by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages” (emphasis added). The full amount can hardly be regarded as synonymous with the already discounted amount.
Returning to the calculation here, deducting $222,525 from $2,930,000 leaves a balance of $2,707,475. This amount must be divided by 65, the number of years for which the jury made the award. The first periodic payment for this item of future damage is, therefore, $41,653.46. The present value of the annuity contract to provide for that payment (in equal monthly installments in advance) and the potential 64 additional annual amounts (to be paid in the same monthly manner), each to be increased by 4% compounded annually, using a discount rate of 5.5%, is $1,761,999. Similar calculations were made for each item of future damage and a decision was dictated on the record on December 9, 1992 providing the attorney for plaintiff all the figures necessary to enter a judgment.
In summary, the procedure to be followed in converting the jury’s verdict to a judgment pursuant to CPLR article 50-A or 50-B is the following:
(1) reduce each item of future damage by an appropriate proportion of the $250,000 lump sum;
*424 (2) divide each reduced amount by the number of years for which the jury made the award (it should be noted that with respect to the award for future pain and suffering that number should be no more than 10 even if the jury made that award for more than 10 years);
(3) compute the present value of each award using the numbers computed in step two as the first annual amount, to be increased by 4% annually, compounded, using an appropriate discount rate (there are a number of computer programs available to make this calculation);
(4) add all of the present values to the award for past damages and to the $250,000 lump sum and compute the attorney’s fee on the total award (in cases covered by CPLR article 50-B in which the fee may be a fixed percentage this step is unnecessary);
(5) deduct an appropriate proportion of the attorney’s fee from the full jury award (after deduction of an appropriate proportion of the $250,000 lump sum) for each item of future damage;
(6) divide each of the amounts calculated in step five above by the number of years for which the award was made (note again that for pain and suffering that number cannot be more than 10);
(7) the amounts calculated in step six above represent the first year’s amount to which the plaintiff is entitled for that item of damage and the judgment should, therefore, direct the defendant to purchase an annuity from an insurance carrier named by the court which will provide for periodic payments to plaintiff in the amounts calculated in step six above to be increased each year by 4% compounded annually;
(8) using the same computer program referred to in step five above, compute the present value of the annuities referred to in step seven above.

The Charge:

Inasmuch as CPLR 4111 (f) requires the court to instruct the jury that in computing future damages those damages should not be discounted to present value, it appears appropriate for the court to also instruct the jurors that such discount will be accomplished by the court in post-verdict calculations and that the damages awarded by the jury will not be the damages which plaintiff will receive. Such charge was re *425 quested by the plaintiff here and, over defendants’ objection, given. The charge was essentially as follows:
Based on your answers to the questions, assuming you award damages in this case, with respect to the raw numbers and the number of years (for each future award), I then make the calculations to reduce those awards to what would be an appropriate award based on discounting future damages to present value.

Can the Economist Testify With Respect to Inflation and Growth Factors?

Another issue on which there appears to be some difference of opinion among Judges is whether, if plaintiff offers the testimony of an economic witness, that witness be allowed in calculating future damages to consider inflation or growth. Simply put, the argument advanced by defendants generally (and by defendants here) is that inasmuch as the court will, in computing future damages, use the 4% annual increase mandated by the statute, to permit the economist to testify about inflation or growth gives to the plaintiff a double recovery.
The argument fails for several reasons. CPLR 5031 (and 5041) apply to post-verdict procedures to be employed by the court in fashioning a judgment. The companion pre-verdict procedure enacted by the Legislature is found in CPLR 4111 (f), which requires the jury to itemize the amounts assigned to each item of future damage and to set forth "the period of years over which such amounts are intended to provide compensation.” That section also provides that in computing future damages "the jury shall be instructed to award the full amount of future damages, as calculated, without reduction to present value.” This latter provision was added in recognition of the fact that pursuant to articles 50-A and 50-B the court would reduce the jury award to its present value. Had the Legislature intended that the 4% annual increase factor in articles 50-A and 50-B have a pre-verdict effect it could have so provided in CPLR 4111 (f) by including in the statute a provision that just as the jury was not to reduce to present value it was not to consider, in computing future damages, any growth or inflation factor. If this provision had been included in CPLR 4111 (f) an economist would, obviously, be precluded from considering growth or inflation in calculating future damages. The CPLR contains no such provision and the economic witness should not, therefore, be so precluded.
*426 This is not to say that, post-verdict, the court in determining whether a particular award is excessive cannot consider appropriate discount rates (Hudson v Manhattan & Bronx Surface Tr. Operating Auth., 150 Misc 2d 283, mod on other grounds 188 AD2d 355) or the 4% annual increase mandated by CPLR 5031 and 5041. Indeed, in computing the amounts to which the jury awards for future therapies should be reduced here I used a 4% growth factor, reducing the 8% testified to by plaintiff’s economic witness by the 4% annual increase provided in CPLR 5031. Similarly if a jury should award the full amount testified to by an economist, who in making his or her calculations used a growth or inflation factor, the Trial Judge can consider the 4% annual increase provided in CPLR 5031 and 5041 in calculating the amount to which the award for that item of damage should be reduced.
That articles 50-A and 50-B relate to only post-verdict procedures was recognized by a most distinguished group of commentators, the PJI committee, in the supplement to volume 1 issued in December 1991. In dealing with those articles, the supplement states: "[t]he provisions governing the structure] of judgments relate only to the method and timing of payments of damages; the substantive law governing the assessment of the amount of damages is not affected.” (1 NY PJI 2.277 [1991 Supp].)
Indeed, precluding the economist from testifying as to growth or inflation could result in plaintiff’s award being discounted twice. One leading economic witness, prior to the enactment of articles 50-A and 50-B, uniformly testified that the appropriate way to discount future damages to present value was to make a flat projection, inasmuch as, historically, the inflation (or growth) rate and the interest rate were essentially the same. Were such an economist required to make a flat projection of future damages the amount submitted to the jury would be one already discounted only to be discounted again by the court post-verdict.
In what I believe to be the first appellate opinion dealing with this issue, the Appellate Division, Fourth Department, in Brown v State of New York (184 AD2d 126, 128-129) recently (Dec. 30, 1992) held, in an article 50-B case, "that the statute requires the trier of fact to account for inflation in making its award for future damages”. The Court relied primarily on the language of CPLR 4111 (f) that the trier of fact is to "award the full amount of future damages * * * without reduction to *427 present value” and reasoned that to fail to account for inflation is to award less than the full amount of future damages.
Although the Court in Brown (supra) stated that it was unable to ascertain from the legislative history why the Legislature provided for a 4% increase in the annual payments, the most likely conclusion is that this provision constitutes a legislative attempt to make the plaintiff whole with respect to the periodic payments which will be eroded by inflation or to compensate the plaintiff for what was lost as a result of not receiving the full amount of the jury award.

Collateral Sources:

As indicated above, defendants, in a post-trial proceeding offered the testimony of Paul Ivers, an employee of the New York City Board of Education. Mr. Ivers testified with respect to a number of statutes, the Federal Individual with Disabilities Education Act, New York State Education Law article 89 and Rehabilitation Act of 1973 § 504. It was his testimony that pursuant to those statutes, the infant plaintiff would be eligible under certain circumstances to receive physical therapy, occupational therapy, speech therapy and psychotherapy without cost. Defendants argue, therefore, that the jury’s awards for damages to pay for those therapies should be severely reduced or eliminated altogether pursuant to CPLR 4545 (c).
That section provides that if the court finds with reasonable certainty that a cost or expense will in the future be replaced or indemnified from any collateral source such as insurance, Social Security, or workers’ compensation it shall reduce the amount of the award by the amount it finds would be provided by the collateral source providing that the court also finds that the plaintiff is legally entitled to the continued receipt of the collateral source pursuant to a contract or otherwise enforceable agreement.
In support of their argument, defendants cite Frey v Smith & Sons (supra) and Budano v Messina (NYLJ, June 8, 1987, at 13, col 2). Both of those cases, however, relate to Social Security benefits which are specifically referred to in CPLR 4545 (c). Whether the statutes referred to in Mr. Ivers’ testimony constitute a contract or otherwise enforceable agreement raises a serious question which need not be resolved at this time. A similar question is raised by the language of the section which refers to "continued receipt” which language could support an interpretation that for the collateral source *428 to be considered as a setoff against the recovery the plaintiff must be receiving the collateral source benefits at the time judgment is entered. The principal problem with defendant’s argument is that Mr. Ivers’ testimony does not support a finding that with reasonable certainty the infant plaintiff will receive the therapies which the jury found he needs solely by virtue of the statutes referred to by the witness.
Trial testimony established that the infant plaintiff will require speech therapy, physical therapy and occupational therapy twice a week to age 21 and thereafter physical and occupational therapy once a week for the balance of his life. With respect to psychotherapy, testimony was offered that such therapy would be required twice a week for the next six to eight years and once a week thereafter. Although the jury limited the awards for those therapies to 13 and 15 years, respectively, by virtue of the amounts awarded it is apparent that it found that the infant plaintiff required the therapies testified to by the expert witnesses called by plaintiff.
Mr. Ivers testified that the infant plaintiff’s entitlement to these therapies would be "based on a clinical assessment of the child”, that it would be necessary that the infant plaintiff be "found to need the services by a committee of Special Education”, that he would be entitled to benefits only "if he has been found to have a learning disability” (an issue vigorously disputed by defendants at trial, one of defendants’ expert witnesses testifying that it was more probable than not that the infant plaintiff would graduate from college), that it had to be determined that "he needs that therapy to maintain him in the program”, that the entitlement of infant plaintiff to therapy, the amount of the therapy, and its duration would depend on a report prepared by a clinician who would "review the child and submit a report” and "on the clinical information presented to a committee”.[2]
Further, the parents could not select the therapist. The infant plaintiff would be treated only by those practitioners approved by the Board of Education and the State Education Department who would be paid a contractual rate arrived at by competitive bidding.[3]
*429 The testimony offered concerning the bureaucratic approvals necessary to obtain treatment, and the limited choice of practitioners willing to accept the State contractual rate of payment sufficiently dilutes the reasonable certainty requirement. I do not find, therefore, with reasonable certainty that the therapies the jury concluded the infant plaintiff needs will be replaced by the so-called collateral sources discussed by Mr. Ivers in his testimony. No deduction will be made, therefore, from the reduced awards for therapies.
Plaintiff, therefore, is entitled to enter judgment against all defendants in the amounts and form dictated on the record on December 9, 1992. As between defendants, their obligations to make the lump-sum payments and to fund the annuities can be apportioned as the jury apportioned liability. The ownership of the annuity policies can be apportioned in the same manner.

. I previously suggested in Ursini v Sussman (143 Misc 2d 727) that CPLR articles 50-A and 50-B be amended to provide for a net discount rate of 2% rather than a variable rate and a 4% annual increase factor. The fact that the net discount rate in Ursini decided May 4, 1989 was 314% and the net discount rate here is 114% serves to reinforce the advisability of such amendment.

. Is it plaintiffs burden, having persuaded a jury that certain therapy is needed, to be required to also persuade a special education committee of that need?

. A distinction can be made between insurance policies or statutes that provide payment for medical services by practitioners or institutions se *429 lected by the patient and a statute which may provide services by practictioners or institutions selected by a government agency. Should a plaintiif who may be entitled to medical services without charge at a Veteran’s Administration facility be precluded from recovering for future medical or hospital expenses?