OPINION OF THE COURT
Simons, J.
Plaintiff Eric Rohring suffered a serious foot injury while working on a construction site when his safety belt broke and he fell 20 feet to a concrete pavement. At the time, he was employed by third-party defendant Falls Steel Erectors, Inc. on a project for the defendant and third-party plaintiff, City of Niagara Falls. Rohring was granted summary judgment on the issue of liability and subsequently a trial was conducted which resulted in an award of $2,501,311 for past and future damages.[1] Thereafter, the trial court structured the award pursuant to CPLR article 50-B.
These cross appeals present two issues concerning the calculation of plaintiff’s judgment. First, we are asked to review that part of the award for attorney’s fees based on future damages. Second, the parties dispute the methodology employed by the courts below in calculating interest on future damages pursuant to CPLR 5002. For the reasons which follow, we agree with the computations of the Appellate Division and therefore affirm.
I.
CPLR article 50-B was enacted in 1986 as part of the State’s effort at tort reform (see, L 1986, ch 682, § 9). In its essential features it closely parallels CPLR article 50-A, which had been enacted a year earlier in response to concerns about the increasing size of verdicts in medical and dental malpractice
*66 actions (see generally, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR art 50-A, at 711, and CPLR art 50-B, at 730-731). Though the statutory scheme of article 50-B is technical and complicated, its basic operation is easily stated. Past damages are paid in a lump sum (CPLR 5041 [b]). Future damages, which are awarded by the jury without reduction to present value (CPLR 4111 [f]), are bifurcated for purposes of article 50-B. The first $250,000 is paid as a lump sum (CPLR 5041 [b]). The remainder, after the subtraction of attorney’s fees and other adjustments, is to be paid in periodic installments (CPLR 5041 [e]). To provide for these periodic payments, subdivision (e) further specifies that defendants are to purchase an annuity contract.
Addressing first the payment of attorney’s fees based on the future damages award, CPLR 5041 (c) states that such attorney’s fees are payable in a lump sum "based on the present value of the annuity contract” called for in subdivision (e). Subdivision (e), in turn, says: "After making any adjustment [including that for attorney’s fees], the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages”. The subdivision states further that this calculation is to be done by applying the discount rate to "the full amount of the remaining future damages, as calculated pursuant to this subdivision”. Concededly, the two provisions, when read together, leave in doubt whether the attorney’s fees are to be deducted before or after the reduction to present value.
Based on its interpretation of the statutory scheme, Supreme Court determined the present value of the attorney’s fees and then subtracted that amount from the gross (undiscounted) value of subdivision (e) future damages before structuring the remaining amount into periodic payments. The Appellate Division disagreed and held that the present value of the attorney’s fees should have been subtracted from the present value of future damages (192 AD2d 228, 232). The Court reasoned that Supreme Court’s methodology improperly inflated the value of the periodic payments that plaintiff would receive.
We agree with the Appellate Division’s conclusion. All parties acknowledge that the present value of attorney’s fees is the appropriate amount to use in the calculation. The sole question is whether that amount should be subtracted from *67 the present value of subdivision (e) future damages or the gross value of those damages. The problem is that article 50-B, like article 50-A, fails to make clear the sequence of calculations to be followed by a trial court in applying subdivision (c) and subdivision (e) (see, Argentine, From Verdict to Judgment: The Evolution, Confusion and Reformation of CPLR Articles 50-A and 50-B, 40 Buff L Rev 917, 939; see also, Frey v Smith & Sons, 751 F Supp 1052, 1056-1057; Ursini v Sussman, 143 Misc 2d 727, 731). Read literally, the two provisions are in fact circular: To determine the amount of attorney’s fees, a court must first know the amount of future damages to be structured (subd [c]), but to determine the amount of future damages to be structured, the court must first know the amount of attorney’s fees (subd [e]). Thus, this appeal requires us to decide whether the amount to be structured is reduced to the present value and then reduced by the present value of attorney’s fees, or whether the present value of attorney’s fees is to be determined and then subtracted from the gross amount, with the remainder to be structured as required by subdivision (e).
Because the statute is patently ambiguous and is impossible to apply as written, we turn for guidance to the underlying intent of the statutory scheme. Articles 50-A and 50-B are technical administrative schemes intended to regulate and structure payment, and they should not be construed in such a way as to increase the underlying liability owed by defendants. Plaintiffs are entitled to be made whole, as determined by the trier of fact, but have no right to overcompensation. The method selected by the Appellate Division is consistent with those principles. Under the Appellate Division’s approach, the full amount defendants have to pay — that is, the combined sum owed to plaintiff and plaintiff’s legal counsel— is the amount awarded by the jury (absent other adjustments required by the statutory scheme and not relevant here). Under Supreme Court’s approach, on the other hand, defendants’ combined payment to plaintiff and to plaintiff’s counsel would actually exceed the amount awarded by the jury.[2] That *68 result is inconsistent with the purposes of articles 50-A and 50-B. Thus, we conclude that the proper methodology is to determine the present value of subdivision (e) future damages before attorney’s fees and then reduce that amount by the present value of attorney’s fees.
II.
Defendants challenge the trial court’s calculation of interest on the future damages. The proceedings here were conducted in two parts. On March 9, 1989, plaintiff was granted summary judgment on liability pursuant to Labor Law § 240. Some two years later, the parties tried the damages portion of the claim. The jury announced its verdict on February 14, 1991. Defendants concede that as a general rule in this type of action interest is calculated from the date liability is established, even though the damage verdict is handed down later (see, CPLR 5001 [a]; 5002; Love v State of New York, 78 NY2d 540, 542). Under the Love approach, courts are authorized to engage in the legal fiction that damages were known and became a fixed obligation at the moment liability was determined. In the instant case, Supreme Court and the Appellate Division calculated interest on both past damages and the present value of future damages from March 9, 1989 (the date of liability).
Defendants concede that they are liable for interest from the date of liability for all damages incurred prior to that date. They assign error only to the trial court’s calculation of *69 interest on future damages. First, they contend that no interest should accrue before plaintiff actually incurred a cost. Only then, they assert, does plaintiff have a valid claim against defendants, and only then should late payment be subject to interest. Thus, as defendants see it, damages incurred after March 9, 1989 should not have been subject to interest until the date plaintiff was in fact deprived of the particular item of loss to be compensated. Second, defendants argue that where part of an award of future damages is subject to the periodic-payment scheme of article 50-A or 50-B, no interest should accrue on that part of the award until a periodic payment is overdue. Defendants’ theory is that plaintiff has no entitlement to the money until the payment becomes due, and only when a payment deadline is missed can interest properly be charged.
Analysis begins with language of the statutory scheme. CPLR 5001, 5002 and 5003 set forth the interest requirements for three distinct periods: Interest prior to verdict (CPLR 5001), interest from verdict to judgment (CPLR 5002) and interest from judgment to payment (CPLR 5003). CPLR 5002 states that interest shall be recovered "upon the total sum awarded * * * from the date the verdict was rendered”. Accordingly, defendants’ argument is undercut by the plain language of the statute: The "total sum awarded” is subject to interest on the date of verdict — no matter whether the award is to compensate future damages, past damages or both.
Defendants nonetheless believe the plain language of the statute should not govern if it results in a "windfall” to plaintiffs, as they believe it does. They rely upon Milbrandt v Green Refractories Co. (79 NY2d 26), where in a wrongful death case we held that future damages should be discounted to the date of liability, which by statute is the date of death, before interest is calculated on them. To do otherwise, we held, would be to create an interest windfall by allowing interest on money not owed to plaintiff inasmuch as defendant had an obligation only for the present value of damages at the date of liability (at 34-35). Though EPTL 5-4.3 (a) literally states that interest is to be paid upon the principal sum from the date of death, our Court declined to interpret that language as allowing an interest windfall (at 35-36).
The question here, however, is not the question of discounting posed in Milbrandt. Future damages here were discounted. Instead, defendants contend that they had no liability whatso *70 ever for future damages on the date of liability. Thus, the essential premise in defendants’ theory of an interest windfall is that they have no liability for future damages until either an actual loss is incurred or until a periodic payment is missed. It follows, then, that even if we were to accept defendants’ contention that no interest windfalls should be allowed, their argument fails if future damages are properly deemed to be liabilities fully owed by defendants as of the date of the liability verdict.
We conclude that they are. The structured judgment schemes of articles 50-A and 50-B do not delay liability. They do not alter liability by making it incremental, nor were they designed to match the timing of periodic payments to the timing of plaintiff’s actual accrual of damages. Instead, the articles merely made payment incremental. Put simply, the CPLR altered how the liability was to be settled; it did not delay liability or even spread it out over a period of time. A defendant’s obligation to a personal injury plaintiff encompasses both past and future damages and becomes fixed as of the date of the liability verdict. That articles 50-A and 50-B did not change that established rule is shown by CPLR 5046 and 5036, which govern adjustments in the payment schedule. Those sections allow the courts, in certain hardship circumstances, to abandon the periodic-payment schedule and order a lump-sum judgment. A plaintiff’s right to seek such an acceleration is necessarily premised on a preexisting liability on the part of the defendant for the full amount of future damages, for nothing about the plaintiff’s unforeseen hardship could rightfully be a basis for imposing a new liability on the defendant.
Thus, we hold that the future damages here were properly treated as a debt owed entirely as of the date of the liability verdict, and interest was properly charged against the present value of future damages from that date under CPLR 5002. That result is consistent with Love and Milbrandt and, most importantly, with the plain language of the statute.
III.
Defendants have also contended on this appeal that Supreme Court improperly allowed a double recovery to plaintiff by admitting evidence of inflation at trial and then imposing the 4% annual adjustment allowed under CPLR 5041 (e). They objected to neither the introduction of inflation evidence nor *71 to the court’s subsequent 4% computation, however, and thus the issue is not preserved for our review. Defendants’ remaining claims do not provide legal grounds for reversal.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
Order affirmed, without costs.

. Eric Rohring’s wife, Charlene, was awarded $20,000 on her derivative claim. That claim is not before us on this appeal.

. Consider, for example, a $1,000,000 award of future damages (irrespective of any required statutory adjustments) where the discount factor is 10% and the attorney is entitled to one third. The following results would be achieved under the two proposed methods: *68 Trial court Gross award of future damages 1,000,000 Present Value of fees — 300,000 700,000 Present Value of 700,000 = 630,000 Appellate Division Gross award of future damages 1,000,000 Present Value of award 900,000 Present Value of fees — 300,000 Remainder 600,000 (one third of Present Value of award, as required by statute) (one third of Present Value of award, as required by statute)
The plaintiff is, of course, entitled to either $1,000,000 in gross damages or $900,000 in present value damages. Under the trial court’s methodology, however, defendants owe $930,000 in present value ($300,000 to the attorney and $630,000 to the plaintiff). Under the Appellate Division’s methodology, defendants owe the proper amount, $900,000 ($300,000 + $600,000).