Jesus ALVAREZ–ICAZA, Plaintiff,

v.

CARTIER INCORPORATED
and Awnings Unlimited,
Defendants.

AWNINGS UNLIMITED, Third–
Party Plaintiff,

v.

KLEEN AWN and Fabric Concepts for Industry, Inc., d/b/a The Awning Man, Third–Party Defendants.

KLEEN AWN, INC., Second
Third–Party Plaintiff,

v.

COUNTY AWNING CLEANING SYSTEMS, and Awning Cleaning Inc., a Connecticut Corporation, Second Third–Party Defendants.

No. 95 Civ. 0531 (HB).

United States District Court,
S.D. New York.

March 14, 1996.

Howard S. Hershenhorn, Piper & Marbury, L.L.P., New York City, for Plaintiff.

Neal Brody, Stephen M. Cohen, Tom Hall, Brody & Fabiani, New York City, for Defendant Cartier.

Richard Nealon, Law Offices of Michael E. Pressman, New York City, for Defendant Awnings Unlimited.

BAER, District Judge.[1]

## STATEMENT OF FACTS

This cause came on for trial before this Court and a jury on November 14, 15, 17, 20, and 21, 1995.[2] The Court submitted special interrogatories to the jury which found that both direct defendants, Cartier Incorporated and Awnings Unlimited, were negligent, that the third-party defendants, Fabric Concepts for the Industry, Inc. d/b/a The Awning Man and Awning Cleaning Inc., were not negligent, that the negligence of both Cartier Incorporated and Awnings Unlimited was a proximate cause of plaintiff's injuries, and that each direct defendant was 50% at fault. The jury itemized its verdict for the plaintiff as follows:

| | |
|---|---|
| Past medical expenses: | $   39,276.00; |
| Past pain and suffering: | $  700,000.00; |
| Future medical expenses: | $  204,000.00; |
| Future loss of earnings: | $1,500,000.00; |
| Future pain and suffering: | $2,500,000.00. |

The jury found that the period of years over which the amounts of future damages are to provide compensation were: 51 years for medical expenses; 32 years for loss of earnings; and 51 years for pain and suffering.

A judgment was entered on February 14, 1996,[3] and this decision followed in an effort to aid counsel in the Court's interpretation of article 50–B of the New York Civil Practice Law and Rules ("C.P.L.R.") which forms the foundation, at least in part, for the underlying judgment.[4]  *See* N.Y.Civ.Prac.L. & R. § 5041 (McKinney 1992) [hereinafter C.P.L.R.].

## DISCUSSION

### I.  The Statute

C.P.L.R. section 5041 provides statutory language to guide courts in fashioning judgments over a certain amount in actions to recover damages for personal injury, injury to property, or wrongful death.  *See* C.P.L.R. § 5041.

To begin with, article 50–B requires that all attorney's fees (based upon past and future damages) be paid in a lump sum. C.P.L.R. § 5041(c).  Attorney's fees related

1. Dave Rifkin, a third year student at Fordham University School of Law, assisted in the research and preparation of this decision.

2. Prior to trial, the Court released second third-party defendant County Awning Cleaning Systems; prior to giving the case to the jury, the Court released third-party defendant Kleen Awn.

3. The judgment was:
    1. $739,276.00 for past damages—⅓ of said sum to be paid as attorney's fees on past damages;
    2. $250,000.00 for the initial portion of future damages—⅓ of said sum to be paid as attorney's fees.
    3. Annuity payments for future damages in excess of $250,000.00 in the amount of: $9,663.17 per month for pain and suffering extending for 10 years or the lifetime of plaintiff, whichever period is shorter;  $1,056.25 per

month for loss of earnings extending for 32 years or the lifetime of plaintiff, whichever period is shorter;  and $63.00 per month for medical expenses extending for 51 years or the lifetime of plaintiff, whichever period is shorter;
    4. Each of these annuity payments shall increase 4% per year;  and
    5. $801,851.00 for attorney's fees related to future damages in excess of $250,000.00.

4. Courts have repeatedly referred to C.P.L.R. § 5041 as a nightmare.  *See, e.g., In re New York Asbestos Litig.,* 847 F.Supp. 1086, 1112 & n. 4 (S.D.N.Y.1994), *aff'd in part, vacated in part sub nom. Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003 (2d Cir.1995) (voluminous citations omitted).  The reason for this is because the statute is patently ambiguous and impossible to apply as written. *Rohring v. City of Niagara Falls,* 84 N.Y.2d 60, 614 N.Y.S.2d 714, 716, 638 N.E.2d 62, 64 (1994).

to periodically paid future damages are calculated from the present value ("PV") of the annuity contract which is purchased to provide such payments to the plaintiff. *Id.; see also infra* (regarding the annuity contract).

The entire amount of any past damages award and the first $250,000 of any future damages award is paid forthwith. *Id.* § 5041(b). Remaining future damages payments (total future damages minus the $250,000 lump sum payment and minus attorney's fees) are reduced to PV (the "Remainder") and an annuity contract is to be purchased which provides for the payment of the Remainder in periodic installments pursuant to the jury verdict, but for no more than 10 years for a future pain and suffering award. *Id.* § 5041(e). The PV of the contract is determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the Remainder. *Id.* The first year's annual payment is the Remainder divided by the number of years over which payments will be made. *Id.* Each succeeding year's payment is increased by 4% compounded annually. *Id.*

## II.  Case Law

### A.  Apportioning the $250,000 Lump Sum

■ Two hundred and fifty thousand dollars of the future damages are paid in a lump sum. *See* C.P.L.R. § 5041(b). This amount, according to the statute, must be deducted from the total amount of future damages before calculations regarding the annuity contract can be made. *See id.* § 5041(e). The lump sum, however, must proportionately reduce each item of total future damages—here $89,201 of future lost earnings, $12,131 of future medical expenses, and $148,668 of future pain and suffering. *Petrides v. Goodgold,* N.Y.L.J., Nov. 7, 1995 at 26 (N.Y.Sup.Ct. Nov. 7, 1995); *see also Andrialis v. Snyder,* 159 Misc.2d 419, 603 N.Y.S.2d 670, 672, 673 (Sup.Ct.1993); *Ursini v. Sussman,* 143 Misc.2d 727, 541 N.Y.S.2d 916 (Sup.Ct.1989).

A simple example may be helpful. Suppose this jury awarded the plaintiff $400,000 for future medical expenses and $600,000 for future pain and suffering (i.e., 40% for future medical expenses and 60% for future pain and suffering). The $250,000 lump sum is then split into its proportionate amounts: $100,000 (40% of $250,000) for medical expenses and $150,000 (60% of $250,000) for pain and suffering. Each component of the future damages award is then reduced by its proportionate amount of the $250,000 lump sum payment: medical expenses to $300,000 and pain and suffering to $450,000. This results in the amount of future damages (e.g., $750,000) upon which further calculations are performed to determine attorney's fees, the amount of the annuity contract bought pursuant to the statute, and the initial payment to the plaintiff ("Reduced Future Damages"). *See* C.P.L.R. § 5041(c), (e).

### B.  Calculating Attorney's Fees and the Remainder

■ In *Rohring v. City of Niagara Falls,* 84 N.Y.2d 60, 614 N.Y.S.2d 714, 638 N.E.2d 62 (1994), the New York Court of Appeals ("Court of Appeals") held that the proper method for calculating attorney's fees and the Remainder was to determine the PV of the Reduced Future Damages and then subtract the PV of the attorney's fees. *Rohring,* 614 N.Y.S.2d at 716, 638 N.E.2d at 64. This is expressed mathematically as follows:

$$\begin{array}{r}
\text{PV Reduced Future Damages} \\
- \quad \underline{\text{PV Attorney's Fees}} \\
\text{Remainder}
\end{array}$$

*See id.* at 716 n. 2, 638 N.E.2d at 64 n. 2.

In 1995, two New York Supreme Court cases applied the Court of Appeals' decision in *Rohring.* In *Petrides v. Goodgold,* N.Y.L.J., Nov. 7, 1995 (N.Y.Sup.Ct. Nov. 7, 1995), Justice Gammerman outlined the following procedure for the structuring of future damage awards:

1.  Reduce each item of future damages by an appropriate proportion of the $250,000 lump sum.

2. Deduct an appropriate unreduced attorney's fee [n1 This is not the fee the attorney will actually receive. That fee is calculated in Step 6 below.] from each item of future damages....

3. Divide each of the amounts calculated in Step 2 by the number of years for which the award was made (note that for pain and suffering that number cannot be more than ten).

4. The amount calculated in Step 3 represents the first year's payment to which the plaintiff is entitled for that item of damage and the judgment should, therefore, direct the defendant to purchase an annuity ... which will provide a stream of periodic monthly payments to plaintiff in the amounts calculated in Step 3 above, to be increased each year by 4% compounded, annually.

5. Compute the present value of the stream of payments referred to in Step 4 above....

6. Compute the actual attorney's fee based on the total present values computed in step 5 above.

*Petrides,* at 26. Justice Gammerman quoted the Appellate Division, 4th Department, to support his view of the "proper" method for calculating the periodic payments and attorney's fees:

To make that calculation [of the periodic payments to which plaintiff is entitled] the court could have subtracted the present value of the awards, *or* it could have subtracted the gross value of the attorney's fees from the gross awards of future damages; either method is correct but, unfortunately, mathematically cumbersome.

*Id.* at 26 (emphasis added) (citation omitted).

In *Silvestri v. Smallberg,* 165 Misc.2d 827, 630 N.Y.S.2d 639 (Sup.Ct.1995), Justice Gans set forth a different procedure for structuring future damages awards:

1. Deduct a proportionate share of the $250,000 lump sum payment from each element of future damages (the result is the Reduced Future Damages);

2. Reduce each element (i.e., pain and suffering, medical expenses, etc.) of Reduced Future Damages to PV using the period of years for which the award was made (which cannot exceed ten years for damages for pain and suffering);

3. Calculate the attorney's fees based on the PV of Reduced Future Damages (i.e., PV of attorney's fees) and deduct the proportionate amount of the PV of attorney's fees from each element of the PV Reduced Future Damages (the result is the Remainder);

4. Divide each element of the Remainder by the period of years determined by the trier of fact (which cannot exceed ten years for damages for pain and suffering). This is the initial periodic payment;

5. Increase the periodic payment annually by 4% compounded annually for the period set by the trier of fact or a maximum of ten years in the case of pain and suffering; and

6. Enter judgment for the full amount of past damages, $250,000 lump sum payment of future damages, and the PV of an annuity contract which will provide for the payments described in steps 4–5.

*See Silvestri,* 630 N.Y.S.2d at 643–44.

In light of the Court of Appeals' decision in *Rohring, Silvestri,* not *Petrides,* seems to properly calculate attorney's fees and the Remainder. Both courts first apportion and deduct the $250,000 lump sum. *See also Andrialis v. Snyder,* 159 Misc.2d 419, 603 N.Y.S.2d 670, 672, 673 (Sup.Ct.1993); *Ursini v. Sussman,* 143 Misc.2d 727, 541 N.Y.S.2d 916 (Sup.Ct.1989). *Silvestri,* however, follows the Court of Appeals' methodology and first determines the PV of the future damages and then reduces this amount by the PV of the attorney's fees; *Petrides,* in contrast, structures the award and attorney's fees based upon non-discounted amounts. *See Silvestri,* 630 N.Y.S.2d at 644; *Petrides,* at 26 (quoting the Appellate Division's, rather than the Court of Appeals', method for calculating the Remainder); *Rohring,* 614 N.Y.S.2d at 716, 638 N.E.2d at 64 ("The proper methodology [to calculate the Remainder] is to determine the present value of [§ 5041(e) ] future damages before attorney's fees and then reduce that amount by the present value of attorney's fees."). For this

reason, I applied the *Rohring* rationale, as clarified by *Silvestri*, to enter the judgment in this case.

### C. Calculating the Initial Payment

[3] *Petrides* calculates the initial annual periodic payment as follows:

$$\frac{\text{1. Undiscounted Reduced Future Damages} - \text{Undiscounted Attorney's Fees}}{\text{Undiscounted Remainder}}$$

$$\text{2. } \frac{\text{Undiscounted Remainder}}{\text{\# of Yrs for which Award is Made}} = \text{Initial Payment}$$

*Petrides*, at 26; *see also supra* part II.B (Justice Gammerman's steps 2–4). *Silvestri* calculates the initial annual periodic payment as follows:

$$\frac{\text{1. PV Reduced Future Damages} - \text{PV Attorney's Fees}}{\text{Remainder}}$$

$$\text{2. } \frac{\text{Remainder}}{\text{\# of Yrs for which Award is Made}} = \text{Initial Payment}$$

---

*Silvestri*, 630 N.Y.S.2d at 643–44; *see also supra* part II.B (Justice Gans' steps 2–5).

In light of *Rohring*, *Silvestri*, which uses PV, seems to properly calculate the initial annual periodic payment. A plaintiff is entitled to the PV of the future damages. *See Rohring*, 614 N.Y.S.2d at 716 n. 2, 638 N.E.2d at 64 n. 2. Also, the statute provides: "The annual payment for the first year shall be calculated by dividing the *remaining amount of future damages* by the number of years over which such payments shall be made...."[5] C.P.L.R. § 5041(e) (emphasis added). The Court of Appeals has interpreted that remaining amount to be the *PV* of the future damages minus the *PV* of attorney's fees (i.e., the Remainder). *See Rohring*, 614 N.Y.S.2d at 716 n. 2, 638 N.E.2d at 64 n. 2. The initial annual periodic payment, therefore, must be based on PV figures.

### D. The Discount Rate

■ C.P.L.R. § 5041 does not establish the discount rate courts should use to reduce judgments of future damages to present value; rather, it is left to individual courts to determine the appropriate rate. *See In re New York Asbestos Litig.*, 847 F.Supp. 1086,

1112 (S.D.N.Y.1994), *aff'd in part, vacated in part sub nom. Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003 (2d Cir.1995).

The Federal Government establishes three discount rates: (1) short-term; (2) mid-term; and (3) long-term. *Id.* at 1112–13 (citation omitted). The short-term rate is for debt not over three years; the mid-term rate is for debt instruments over three years but less than nine years; the long-term rate is for debt over nine years. *Id.* at 1113 (citation omitted).

Several cases have used these rates for purposes of calculating the PV of future damages awarded under C.P.L.R. section 5041. *See id.* at 1113; *Sales v. Republic of Uganda*, 828 F.Supp. 1032, 1047 n. 18 (S.D.N.Y.1993); *Peterson v. Zuercher*, 152 Misc.2d 684, 584 N.Y.S.2d 968, 971–72 (Sup.Ct.1992), *aff'd*, 198 A.D.2d 797, 605 N.Y.S.2d 689 (App.Div. 4th Dep't 1993). It appears that, should it choose instead, the Court may apply a discount rate for section 5041 calculations which is close to the Federal discount rate. *See Sales v. Republic of Uganda*, 828 F.Supp. 1032, 1047 n. 18 (S.D.N.Y.1993) (citing *Peterson*, 584 N.Y.S.2d at 971–72).

---

**5.** The number of years cannot exceed 10 years for pain and suffering. C.P.L.R. § 5041(e).

## III. Application of the Law to this Judgment

### A. The $250,000 Lump Sum

Two hundred and fifty thousand dollars of the future damages were payable in a lump sum. *See* C.P.L.R. § 5041(b); *supra* part II.A. Here both parties in their proposed judgments provided for the lump sum payment of $250,000 of future damages. (Pl.'s Proposed J. at 3–4; Def.'s Proposed J. at 3.) The judgments of both parties also properly reduced each item of total future damages by a proportionate amount of the $250,000 lump sum. (Pl.'s Spreadsheets at 2; Def.'s Proposed J. at 3–4; *see, e.g., Petrides v. Goodgold,* N.Y.L.J. Nov. 7, 1995 at 26 (N.Y.Sup. Ct. Nov. 7, 1995); *see also supra* part II.A.

### B. Calculating Attorney's Fees and the Remainder

Plaintiff calculated the attorney's fees based on the method prescribed in *Petrides v. Goodgold* (which used undiscounted amounts in the calculation). (Letter from Hershenhorn · of 12/26/95 at 2–3; Pl.'s Spreadsheets at 3); *see supra* part II.B; *see also Petrides,* at 26. Defendant calculated the attorney's fees based on the method set forth in *Silvestri v. Smallberg.* (Def.'s Proposed J. at 3–4; Def.'s Annuity Stream Analysis; Letter from Cohen of 12/21/95 at 4); *see supra* part II.B; *see also Silvestri v. Smallberg,* 165 Misc.2d 827, 630 N.Y.S.2d 639, 643–44 (Sup.Ct.1995).

In my view, the plaintiff's calculation of the attorney's fees and the Remainder was improper because it did not follow the methodology prescribed by the Court of Appeals in *Rohring. See supra* part II.B. As stated above, I find that the Court of Appeals' decision in *Rohring,* and the subsequent decision in *Silvestri,* to be the proper way to calculate both the attorney's fees and the Remainder in a future damage award. I, therefore, adopted the defendant's calculation of the attorney's fees related to future damages and the Remainder which came to $801,851.00 for the attorney's fees and $1,603,702.00 for the Remainder.

### C. Calculating the Initial Payment

Plaintiff calculated the initial annual periodic payment based on the method prescribed in *Petrides* (which used undiscounted amounts in the calculation). (Letter from Hershenhorn of 12/26/95 at 3; Pl.'s Spreadsheets at 3–4; Pl.'s Proposed J. at 4); *see supra* part II.C; *see also Petrides,* at 26. Plaintiff, however, reduced the gross undiscounted monthly payment (which is based on undiscounted numbers as well) to a PV (i.e., to a gross discounted monthly payment). (Pl.'s Proposed J. at 4; Pl.'s Spreadsheets at 4.) Defendant calculated the initial annual periodic payment based on the method set forth in *Silvestri.* (Def.'s Proposed J. at 3–4; Def.'s Annuity Stream Analysis; Letter from Cohen of 12/21/95 at 4); *see supra* part II.C; *see also Silvestri,* 630 N.Y.S.2d at 643–44.

Again, in my view, the plaintiff's calculation of the initial periodic payment, even though the payment was reduced to a PV, was improper because it did not follow the methodology prescribed by the Court of Appeals in *Rohring. See supra* part II.C. I, therefore, adopted the defendant's calculation of the initial periodic payment which came to: $9,663.17 per month for pain and suffering extending for 10 years or the lifetime of plaintiff, whichever period is shorter; $1,056.25 per month for loss of earnings extending for 32 years or the lifetime of plaintiff, whichever period is shorter; and $63.00 per month for medical expenses extending for 51 years or the lifetime of plaintiff, whichever period is shorter.

### D. The Discount Rate

The parties disagreed over the appropriate discount rate. Plaintiff proposed using 5.5% as the discount rate for pain and suffering and 6.0% for payments for lost wages and medical expenses. (Letter from Hershenhorn of 12/19/95 at 5.) Defendant suggested using three separate discount rates—a short-term rate (5.5%), mid-term rate (5.95%), and long-term rate (6.0% or 6.26%)—based upon *In re New York Asbestos.*[6] (Letter from

---

**6.** The short-term, mid-term, and long-term rates suggested by the Defendant are extremely close

to those reported for the week of November 21, 1995. *Key Interest Rates,* Wall St. J., Nov. 28,

Hall of 12/5/95 at 2; Def.'s Annuity Stream Analysis); *see In re New York Asbestos Litig.,* 847 F.Supp. 1086, 1112 (S.D.N.Y.1994), *aff'd in part, vacated in part sub nom. Consorti v. Armstrong World Indus., Inc.,* 72 F.3d 1003 (2d Cir.1995).

The court may choose any discount rate that bears close enough resemblance to the Federal discount rate. *See, e.g., Sales,* 828 F.Supp. at 1047 n. 18; *see also supra* part II.D. It was the Court's opinion that using three discount rates, per *In re New York Asbestos* and as the defendants suggested in their proposed judgment, was the best choice. The application of 3 discount rates will yield the most mathematically accurate result. I, therefore, adopted the defendant's calculations which were based upon three discount rates.

### CONCLUSION

Any method of applying article 50–B will be time consuming and complicated. The approach set forth above may clarify some of the problems associated with article 50–B and has attempted to follow the law as spelled out by the Court of Appeals.

For the foregoing reasons, judgment was entered as set forth above on February 14, 1996.

**SO ORDERED.**

1995, at C23. In fact, defendant's numbers err on the side of generosity to the plaintiff.