OPINION OF THE COURT
Frank J. Barbaro, J.
Defendant City of New York now moves pursuant to CPLR 5015 (a) (1) to vacate the judgment entered November 10, 1997 and either to substitute its own “Counter Proposed Judgment” or, in the alternative, to be heard with respect to proposed changes in the methodology for calculating the judgment. Plaintiff has consented to vacating the judgment. The motion to vacate is therefore granted.
*525 After reviewing the parties’ submissions, the court concludes that, while the judgment previously entered was correct in most respects, two of the five arguments advanced by defendant have some merit. Accordingly, this court directs that the judgment be recalculated in accordance with the discussion below.
THE STATUTORY SCHEME OF CPLR ARTICLE 50-B
In 1986, the Legislature enacted CPLR article 50-B, extending to tort cases the “structured judgment” which had been applied to medical malpractice cases the previous year by CPLR article 50-A. While CPLR article 50-B is “ ‘every Judge’s nightmare’ ” to apply (Singletary v Three City Centre, 158 Misc 2d 841, 844), the basic scheme is straightforward. The first $250,000 of future damages is to be paid as a lump sum. After deductions for attorney’s fees and expenses, the remaining amount of future damages is divided by the period of years determined by the trier of facts to determine the amount of the first annual installment. The installments are increased by 4% each year for reasons which are not explained in the legislation.* To ensure that these periodic payments will be made, defendant is required to purchase an annuity contract (CPLR 5041 [e]).
As usual, the devil is in the details. Calculations were complicated by the legislative decision to limit to 10 years the time over which payments for pain and suffering could be spread. This necessitates calculating the pain and suffering installments separately in most instances and apportioning the $250,000 lump sum among the categories of future damages. Matters are further complicated by provisions that attorney’s fees should be paid in lump sum, not installments. These and other complications have resulted in substantial litigation concerning the process of awarding future damages. In this case, for example, defendant raises five separate arguments faulting the methodology used by plaintiff in calculating future damages.
defendant’s arguments
Defendant first argues that the annuity must be calculated based on the present value of the future award. Defendant *526 reasons that since lump-sum future damages are reduced to present value, the value of the annuity to be purchased must also be calculated based on the present value of the future damages awarded. Plaintiff, on the other hand, argues that defendant’s methodology results in an unfair “double discounting” which is both contrary to legislative intent and to the Court of Appeals rationale in Rohring v City of Niagara Falls (84 NY2d 60, supra).
Plaintiff is correct. Prior to enactment of article 50-B, future damages were payable as a lump sum. To avoid overcompensating plaintiffs, it was thus necessary to discount awards for future damages or expenses to present value. Article 50-B was intended to alter things only to the extent of providing that future damages in excess of $250,000 would be paid in installments with judgment entered in the amount of the present value of an annuity contract that would pay these installments. The present value of such an annuity contract already incorporates a discount reflecting the fact that the payments under the contract will be made in the future. Since discounting is implicit in determining the present value of the annuity contract, there is no need to further discount the future damages award before calculating the annuity.
Defendant’s second argument is that the 5% discount rate used by plaintiff’s expert in calculating present value is “completely arbitrary and not based on any sensible prediction of the rate of interest plaintiff could have obtained in a secure investment on the date of the verdict.” (Murray affidavit 16.) Plaintiff counters by arguing that the 5% figure accurately reflects the discount rate in the annuity market. While plaintiffs approach is essentially correct, this court believes that the statutory language of article 50-B dictates a different methodology.
Article 50-B not only provides that the court shall enter a judgment in the amount of the present value of an annuity contract providing for the installment payments, but that the judgment “shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract” (see, CPLR 5041 [e]). Implicit in this statutory scheme is the idea that the discount rate used in calculating the present value of the annuity should be determined by the most favorable rate available in the annuity market. This was implicitly recognized in Lieberman v Perez-Veridiano (142 Misc 2d 223, 228) in which the court directed the plaintiff to “obtain several estimates or *527 quotes for the annuity from the insurance companies and various structured settlement companies who write annuity contracts.”
This court adopts the basic approach of the Lieberman court. Plaintiff is directed to obtain several estimates or quotes for the annuity from the insurance companies and various structured settlement companies who write annuity contracts and to provide a copy of these estimates or quotes to defendant. Since the statute places the onus on defendant to guarantee that an annuity may be purchased for the amount of the judgment, and because defendant, in any event, has a greater incentive to “comparison shop” in the annuity market, the defendant shall have one week from the date on which it receives the quotes or estimates to obtain a lower quote or estimate. In obtaining quotes or estimates, defendant is, of course, expected to evaluate the credit risk of the entity issuing the annuity so as to ensure that the risk of default is de minimis, bearing in mind that defendant will be expected to bear the credit risk and to make plaintiff whole in the event of default. One week following defendant’s receipt of plaintiffs quotes and estimates, plaintiff shall recalculate the proposed judgment using the lowest quote or estimate obtained by either of the parties. If defendant has not supplied its own quotes or estimates to plaintiff’s counsel within one week of defendant’s receipt of plaintiffs quotes or estimates, plaintiff shall recalculate the proposed judgment based on the lowest quote or estimate which plaintiff has obtained.
Defendant’s third argument is that the statutory 4% increase must be added after the present value and monthly annuity computations are made. As discussed above, this interpretation is at odds with the statute. The annual 4% increase in the installment payments has to be added before the present value of the annuity can be calculated. Furthermore, the language of the statute, recently clarified by the Court of Appeals decision in Rohring, requires that the attorney’s fees be calculated on the basis of the present value of the annuity contract (CPLR 5041 [c]; Rohring v City of Niagara Falls, 84 NY2d, supra, at 67-68).
Defendant’s fourth argument raises the issue of the rate of prejudgment interest to be applied in this case. The Court of Appeals recently addressed this question in a similar context in Rodriguez v New York City Hous. Auth. (91 NY2d 76 [1997]). In that case, defendant, like the defendant herein, argued that the rate of interest should be based on an average of Treasury *528 Bill rates, rather than the 9% rate provided for in CPLR 5004. After analyzing the history of CPLR 5004, the Court of Appeals held that “9% is a not-to-be-exceeded maximum, instead of a statutorily fixed rate of interest to be imposed on judgments against the Housing Authority.” (Supra, at 80.) The Court ruled that “a court may, in its discretion, impose a rate of interest lower than 9%” (supra), and remitted the case with directions that the Supreme Court exercise its discretion. However, the Court of Appeals rejected defendant’s argument that the interest rate “ ‘should be based on the assumption that a reasonable plaintiff would have placed the verdict or judgment amount in a relatively safe investment, such as a Treasury security.’ ” (Supra, at 80-81.) In declining to limit the court’s discretion upon remittal, the Court stated: “We only note that the Legislature has set 9% as the rate of interest to be generally imposed so that amount is presumptively fair and reasonable, notwithstanding any contemporaneous grant of judicial discretion to impose a lesser amount * * * The fact that another interest computation may also be ‘reasonable’ does not mandate the selection of that rate in an exercise of discretion.” (Supra, at 81.)
Here, as in Rodriguez (supra), defendant urges the court to base the interest rate on the assumption that plaintiff would have placed the verdict amount in short-term Treasury securities. This does not seem a very reasonable assumption in the midst of the biggest bull market in the history of the United States stock markets. It seems equally reasonable to assume that plaintiff would invest at least a portion of the verdict amount in equity securities or in other riskier or longer-term fixed-income securities. In light of current market conditions, this court has no difficulty envisioning equally reasonable investment scenarios which would have netted plaintiff more than the 9% rate provided by statute. Accordingly, this court concludes that plaintiff’s use of a 9% rate in this case was entirely appropriate.
Defendant’s final argument is that interest on the future damages must be calculated based on the present value of all future damages. This court concurs with defendant’s assessment that Pay v State of New York (87 NY2d 1011, supra) is dispositive of this issue. In Pay, the defendant’s liability was determined in 1990 but judgment — including future damages of almost $10 million — was not entered until 1994, after which payments were structured pursuant to article 50-B. The defendant argued that for purposes of calculating prejudgment inter *529 est, all future damages should have been discounted to the 1990 date of the decision finding liability. The Pay Court agreed, finding that both the plain language of CPLR 5002 arid Court of Appeals decisions in cases in which articles 50-A and 50-B were not applicable mandated that interest be charged against the present value of future damages from the date of the determination of liability. The Court reasoned that since article 50-B was a “ ‘technical administrative scheme [] intended to regulate and structure payment,” rather than to alter defendant’s liability, there was no reason not to apply the approach it had used in the prior cases to personal injury actions. (Supra, at 1013.) In light of the holding in Pay, this court is constrained to direct that all future damages — the $250,000 lump sum and the present value of the annuity (calculated as of the date of judgment) — be discounted back to the date on which liability was determined and that prejudgment interest at a rate of 9% be paid on the amount so calculated.
In sum, this court directs that the judgment entered on November 10, 1997 be vacated. Plaintiffs counsel is directed to obtain several estimates or quotes for the annuity, to allow defendant one week from defendant’s receipt of these quotes or estimates in which defendant can search the market for a lower quote or estimate and, at the end of that week, to recalculate its proposed judgment based on the lowest estimate or quote obtained by either party and in accordance with this decision.
Until this area of the law is authoritatively clarified, article 50-B will continue to be an open invitation to litigation. The court hopes that the parties herein will decline that invitation and work together in a spirit of cooperation to conclude this case as expeditiously and inexpensively as possible.

 Presumably, this 4% increase is to adjust the annual payments for inflation. However, there is considerable dispute over whether the 4% increase is an inflation adjustment, and the Court of Appeals has not yet addressed this issue. (See, Rohring v City of Niagara Falls, 84 NY2d 60, 70-71; Pay v State of New York, 87 NY2d 1011, 1014.)