OPINION OF THE COURT
James E. Euken, J.
*153 The issue before the court is the calculation of damages at a CPLR article 50-B hearing. Plaintiff received catastrophic injuries in a fall through Foster Wheeler’s roof on July 27, 1999, rendering him a quadriplegic. Summary judgment was granted under Labor Law § 240 (1) and entered on December 13, 2000, and the Appellate Division, Fourth Department, unanimously affirmed (288 AD2d 903). The liability trial on May 9, 2002 found Mr. Schifelbine’s employer K.C. Swann & Son Roofing Company, Inc., 100% liable.
A second jury awarded damages on May 31, 2002 of $22,193,435 at trial in addition to $1,174,774 in past medical damages which were stipulated during trial:
Past Damages
(1) Lost Earnings
$ 26,906
(2) Past Medical Expenses
$ 1,174,774
(3) Pain and Suffering
$ 1,000,000
Future Damages
(D Lost Earnings to be paid over 22 years
$ 300,000
(2) Future Pain and Suffering to be paid over 10 years
$ 5,500,000
(3) Future Medicals to be paid over 38.1 years
$ 15,366,529
TOTAL
$ 23,368,209
On August 23, 2002, this court rejected all motions by Foster Wheeler and Swann to vacate the jury’s verdict finding; this court found that the jury verdict was not against the weight of the evidence; that a new trial was not required; and that the awards did not deviate from what would be reasonable compensation under CPLR 5501 (c).
CPLR article 50-B requires the structuring of the awards for future earnings, future pain and suffering and future medicals. The awards for past lost earnings, past pain and suffering and past medicals are not structured, but paid at the time of judgment. Plaintiffs Social Security disability is treated as a collateral source against his past and future earnings.
*154 The submissions and testimony of the parties differ with respect to their methodology as well as the choice in discount rates and the date on which they are applied to arrive at present value.
The methodology of plaintiff follows that used by Justice Gammerman in Ursini v Sussman (143 Misc 2d 727 [1989]) and Petrides v Goodgold (170 Misc 2d 770 [1995]). It was followed in Peterson v Zuercher (152 Misc 2d 684 [1992]) and by the Fourth Department and Court of Appeals in Rohring v City of Niagara Falls (84 NY2d 60 [1994]) and more recently in Bryant v New York City Health & Hosps. Corp. (93 NY2d 592 [1999]). The Court of Appeals observed that article 50-B has generated a good deal of frustration and litigation. The same is true here as defendant urges that plaintiffs methodology increases its liability and overcompensates plaintiff. Defendant submits that the court should follow Professor Goldman’s method of taking each amount awarded by the jury for future damages and make a reasonable assumption as to the starting cost of each particular loss, and the applicable growth rate over the number of years stated by the jury so as to arrive at the total sum awarded. However, this court intends to follow the “Gammerman method” in accord with the above-cited decisions and the statutory scheme.
The numerical discount rate as well as the date it is to be applied is not expressly found in the statute. CPLR 5041 provides that the court should apply the discount rate in effect at the time of the award to the full amount of the remaining future damages. Given the amount of the future damages here a small change in the discount rate makes a significant difference in the size of the attorney’s fees.
The court has reviewed the discount rates opposing economists and counsel have argued and elects to apply the rates that reflect the average yield of government securities maturing over the life of the three periodic payments as proposed by plaintiffs economist.
Plaintiff contends that Caruso v LeFrois Bldrs. (217 AD2d 256 [1995]) requires the court to select the discount rate as of the date of judgment. Defendant urges the court to set the date of the jury damage verdict as the date of award. The Fourth Department in Caruso cites Karagiannis v New York State Thruway Auth. (209 AD2d 993 [1994]), which states that the date used to determine the appropriate discount rate is the date of the original award or the date that judgment was entered. In *155 Karagiannis, the 50-B hearing was held two years after the initial awards. In Young v Tops Mkts. (283 AD2d 923 [2001]), the Court stated that the trial court did not abuse its discretion by applying a discount rate in effect at the time of the verdict. The judgment was entered one year and four months after the jury verdict on damages. The court reads CPLR 5041 and the above case law to give it discretion in the selection of the “time of the award.”
CPLR article 50-B is a technical administrative scheme which was intended to regulate a structured payment. It should not be used to increase the underlying liability owed by defendant (see, Rohring v City of Niagara Falls, 84 NY2d 60 [1994]). Setting the jury damage verdict date of May 31, 2002 as the time of award and using the methodology of plaintiff would result in counsel fees on future damages in the sum of $5,490,760. Setting the time of award on September 23, 2002, the date of the judgment would increase counsel fees on future damages to $6,342,448. Plaintiff will receive the same monthly annuities regardless of the fee discount rate and payment date set by the court.
The court sets the discount rate in effect at the time of the jury verdict on damages to avoid increasing the underlying liability of defendants by nearly a million dollars over a four-month period due to declining interest rates. These discount rates are assigned as follows as of May 31, 2002: 4.74% for future earnings, 4.36% for future pain and suffering, and 5.73% for future medicals. The court sets a separate discount rate for each of the annuities as their terms are significantly different (see, Hancock v 350 Hull Realty Corp., NYLJ, Feb. 28, 1995, at 30, col 3).
The court applies the presumptively fair and reasonable statutory rate of 9% interest pursuant to CPLR 5002 and 5003 (see, Rodriguez v New York City Hous. Auth., 91 NY2d 76 [1997]). The rate of interest payable shall be 9% for the period from the date of entry of summary judgment (Dec. 13, 2000) to the date of entry of final judgment herein and 9% for the period from the date of entry of final judgment to the date of payment or delivery of the annuity contracts (see, Sassoonian v City of New York, 261 AD2d 319 [1999]).
*156 Table l[1] shows the categories of the three future damages; the adjusted gross awards before discounting; a reduction for its pro rata reduction for the initial $250,000 lump-sum payment required by CPLR 5041 (b); the remainder after deduction; the period of time payable; and the annual periodic award (nondiscounted) remainder divided by the number of years payable (see, Bryant v New York City Health & Hosps. Corp., 93 NY2d 592 [1999]). Future lost earnings of $300,000 are reduced by the collateral source Social Security disability benefits of $137,587, pursuant to CPLR 4545 (c) because it is clear to the court that Mr. Schifelbine will continue to be eligible for such payments for his work life expectancy (see, Caruso v LeFrois Bldrs., 217 AD2d 256 [1995]).
Table 1
Category
Adjusted Gross Award
Reduction for Lump-Sum Future Damages
Remainder
Time Frame
Annual Periodic Award
Future Pain & Suffering
$ 5,500,000
$ 65,386
$ 5,434,614
10
$543,461
Future Medicals
$15,366,529
$182,683
$15,183,846
38.1
$398,526
Future Lost Earnings
$ 162,413
$ 1,931
$ 160,482
22
$ 7,295
Total
$21,028,942
$250,000
$20,778,942
To determine the present value of future damages each annual periodic award is increased by 4% per annum over the time frame and it is payable discounted back to the date of liability finding (see, Pay v State of New York, 87 NY2d 1011 [1996]). The discount rate is 4.74% for future earnings; 4.36% for future pain and suffering; and 5.73% for future medicals. Plaintiffs attorneys are entitled to $5,490,760, one third of the total present value, which is then deducted on a pro rata basis from each category of future damages. The last column of table 2 reflects the net present value for each category of future damages after reduction for attorney’s fees.
*157 Table 2
Category
Present Value of Future Damages with 4% Growth
Attorney’s Fees 33Vs%
Net Present Value
Future Lost Earnings
$ 145,988
$ 48,663
$ 97,325
Future Pain and Suffering
$ 5,247,374
$1,749,125
$ 3,498,249
Future Medicals
$11,078,916
$3,692,972
$ 7,385,944
Total
$16,472,278
$5,490,760
$10,981,518
Table 3 sets forth the lump-sum amounts owing for past pain and suffering, past earnings, past medical expenses, attorney’s fees on future damages and the first $250,000 of future damages. Past damages and the first $250,000 of future damages are subject to attorney’s fees.
Table 3
Category
Lump-Sum Payments[2]
Past Pain and Suffering
$1,000,000
Past Earnings
$ 14,870 (after reduction for Social Security disability payments of $12,036)
Past Medicals
$1,174,774 (subject to compensation lien)
First $250,000 of Future Damages
$ 250,000
Attorney’s Fees on Future Damages
$5,490,760
Total
$7,930,404
Table 4 relates back to the annual periodic awards of table 1, divides those amounts by 12 to arrive at a monthly figure, and multiplies by two thirds to reflect the reduction for attorney’s fees.
Table 4
Category
Annual Periodic Award
Initial Monthly Payment
Time Frame
Future Lost Earnings
$ 7,295
$ 405
22
Future Pain and Suffering
$543,461
$30,192
10
Future Medicals
$398,526
$22,140
38.1
*158 In accord with the above figures, future damages required to be paid periodically pursuant to CPLR 5041 shall be paid (see table 1) from the date of the jury verdict on damages as follows:[3]
Future pain and suffering: $5,434,614, with an initial monthly annuity of $30,192 beginning May 31, 2002, increasing at 4% on each May 31st thereafter, for a term of 10 years or life, whichever is less.
Future medical expenses: $15,183,846, with an initial monthly annuity of $22,140 beginning May 31, 2002, increasing at 4% on each May 31st thereafter, for a term of 38.1 years or life, whichever is less.
Future lost earnings: $160,482, vzith an initial monthly payment of $405 beginning May 31, 2002, increasing at 4% on each May 31st thereafter, for a term of 22 years or life, whichever is less.
Judgment shall be entered in favor of Wayne C. Schifelbine for $10,981,518, the net present value of three annuity contracts (see table 2) that will provide for the payment of future damages in periodic installments according to the above schedule, and requiring defendant to offer and guarantee the purchase and payment of such contracts.
The judgment to be entered shall also provide for payment in a lump sum of prejudgment interest at the rate of 9% on the net present value of the annuity contracts, $10,981,518 from the date of entry of summary judgment to the date the annuity contracts are delivered (see, Gordon v City of New York, 188 Misc 2d 246 [2001]).
Finally, judgment shall be entered for $7,930,404 in favor of Wayne C. Schifelbine representing the items set forth in table 3 together with interest at the rate of 9% from the date of entry of summary judgment.

. Tables used in this decision adapted from Judge John P. Lane’s methodology, Fisher v State of New York (Ct Cl, Claim No. 93606, Mar. 26, 2001, affd 292 AD2d 882 [2002]).

. No litigation expenses were submitted, pursuant to CPLR 5041 (c).

. Payment date of jury verdict on damages requested by plaintiff by letter application of November 8, 2002 was objected to by third-party defendant by letter dated November 13, 2002, and by defendants by letter dated November 12, 2002 (see, Rohring v City of Niagara Falls, 84 NY2d 60, 70 [1994]; Young v Tops Mkts., 283 AD2d 923, 925 [2001]; Brown v City of New York, 297 AD2d 771 [2d Dept 2002]).