OPINION OF THE COURT
Israel Margolis, J.
Claimants move pursuant to CPLR 5044 for an order requir *84 ing that all the outstanding payments under the CPLR article 50-B structured judgment herein be accelerated in a lump sum without reduction to present value and be immediately due and payable, because the defendant tendered payment of its first installment of $43,471.12 due under the second amended judgment herein on July 7 rather than July 1, 1993. On June 15, the defendant contracted with Metropolitan Life Insurance Company (Metropolitan) to pay the future periodic installments, including the July 1 payment, and paid Metropolitan $2,557,569.26. Metropolitan states the gross future installments, if not reduced to present value, total $3,129,420.
The facts are largely not disputed. On June 30, 1992,* I issued a determination which awarded claimant Jane Doe gross damages of $4,354,550 and her husband Joseph Doe gross future damages which totaled $1,016,642. An amended judgment, structuring the award, was entered September 29, 1992. The parties appealed, defendant urging that, inter alia, the award was too high, the claimants urging, inter alia, the award was too low and that it was unconstitutional to structure the judgment under article 50-B. Pending a determination of their appeals, the defendant paid claimants a portion of the judgments, $3,000,000, on December 31, 1992. The Appellate Division issued its determination on March 12, 1993, which modified our determination by, inter alia, increasing the gross award to Mrs. Doe (Doe v State of New York, 189 AD2d 199, 207). To satisfy CPLR article 50-B, the parties then entered into an undated, stipulated "second amended judgment and order”, "so ordered” by me on June 2, 1993, the date I received and sent it for filing in Albany on June 7, 1993. The new structured judgment provides for gross awards to Mrs. Doe in the amount of $5,035,700 and to Mr. Doe in the gross amount of $1,000,000. Payment of the awards was to be partly made in lump sums and to be partly made through periodic installments scheduled with varying termination dates, but the first installments totaled $43,471.12. The stipulated order also provided that the County Clerk of Oneida County was directed to pay over $360,044.05 that had been held from the State’s $3,000,000 payment made on December 31, 1992. The order further provided that the State was required to pay to the Does $501,585.24 in cash, representing the 12 monthly payments that were due July 1, 1992 through June 1, 1993, plus a per diem rate of interest on all previously *85 unpaid amounts. On June 15, the State paid Metropolitan. The State paid the Does $585,950.11 by checks mailed June 28, 1993, which represents the principal balance due and unpaid as of that date plus past periodic installments due and interest.
Pursuant to the annuity contracts posted by the State and approved by the court (see, CPLR 5042, and my order dated July 29, 1993), Metropolitan agreed to assume the defendant’s obligations to make the periodic payments payable under the judgment commencing July 1, 1993. Metropolitan made a special appearance and described its practices in issuing payments on annuities and how the Does were paid.
It is undisputed that on or about June 17 and 18, 1993, Metropolitan received from the broker, who had negotiated the annuity contract sales, signed banking agreements from the claimants requesting payment to an account at a bank, but no zip code for the bank was included in the forms. Metropolitan usually mailed its first annuity installments. Lacking the zip code, data entry at Metropolitan was delayed until July 2. As Monday July 5 was a holiday, a check for the July monthly periodic installments totalling $43,471.12 was not issued by Metropolitan until July 6, and not received at the bank until July 7.
Claimants urge that as the check was not sent July 1 by operation of law they are entitled to immediate payment of the gross amount of all outstanding periodic installments without reduction to present value. Metropolitan Life Insurance estimates that sum to total $3,129,420. Claimants rely upon CPLR 5044, which is part of CPLR article 50-B which establishes a methodology of paying certain judgments, like the one entered at bar. CPLR 5044 provides: "If at any time following entry of judgment, a judgment debtor fails for any reason to make a payment in a timely fashion according to the terms of this article, the judgment creditor may petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum. In calculating the amount of the lump sum judgment, the court shall total the remaining periodic payments due and owing to the judgment creditor, as calculated pursuant to subdivision (b) of section five thousand-forty-one of this article, and shall not convert these amounts to their present value. The court may also require the payment of interest on the outstanding judgment.” The article does not define what constitutes a failure "to make a payment *86 in a timely fashion”. The statute, which clearly vests some discretion in the judgment creditor as to whether to apply for the acceleration upon a failure of the debtor to meet its obligation, makes no reference to the court’s discretion in fashioning a remedy when the petitioner has established a right to relief. Claimants urge that once a failure to make a payment "in a timely fashion” has been established, the relief to which they are entitled vests as a matter of law. They urge there is no place for equitable considerations as the statute is written. They urge that if the statute is inequitable, a remedy lies with the Legislature.
We find that claimants have not established that the defendant failed to make a payment in a timely fashion within the meaning of CPLR 5044 on this record. Moreover, we find that the court is vested with some judgment in determining whether the judgment debtor’s conduct has actually amounted to a failure to make a payment in a timely fashion in the context presented. As we do not find claimants have met their burden on this application, we need not determine if the court is vested with some discretion to grant alternative relief where a failure to make a payment in a timely fashion has been established under CPLR 5044. If we had such discretion, we would deny the extreme remedy requested by claimants.
As a premise to statutory construction, we must note that, where the intent of the Legislature is clear by the plain meaning of the words employed, there is no need to resort to legislative history or extraneous materials in an attempt to garner what was intended. While some in referring to other parts of article 50-B have had occasion to note that "the complexity of the statute is exceeded only by the complexity of its application” (Lieberman v Perez-Veridiano, 142 Misc 2d 223, 224) and that "[a]t the outset, it should be observed that the statute, and particularly sections 5041 (c) and (e), is not a model of clarity” (Frey v Smith & Sons, 751 F Supp 1052, 1056 [ND NY 1990, McAvoy, J.]), here we are blessed with a rather common phrase, "in a timely fashion”. In describing the debtor’s obligation of payment, "in a timely fashion” clearly means that the payment is intended to be made with aspects of one on time; that it is of a sort one timely made, or is of a style of timeliness. The phrase itself compels the exercise of some judgment which is not subject to a bright-line test. Were a strict interpretation of the time limits to be imposed, the law and the Legislature had a lexicon full of appropriate words and phrases. Examples include "on time”, "time is of *87 the essence”, "forthwith”, and "a date certain”. Here, however, the phrase employed by the Legislature is "payment in a timely fashion”, clearly indicating that the court’s interpretation of the facts presented, through the exercise of reasoned judgment, must be the measure. Claimants’ counsel rightly notes that what is required is a payment "in a timely fashion according to the terms of this article” (CPLR 5044 [emphasis added]), but that does not dictate a different result. The article, in regard to payments to be made in monthly installments, directs that, unless otherwise agreed, payments "shall be paid in equal monthly installments and in advance” (CPLR 5041 [e]). While this payment, sent on the 6th of the month, is not fully "in advance” of the entire month, the court finds in light of all the circumstances that it was made in a timely fashion according to the terms of article 50-B.
Moreover, as the statute in this context refers to being in accord with the entire article, we should not ignore the purpose of the article. Articles 50-A and 50-B were created to permit judgment debtors a practical opportunity to pay judgments over the course of time and to allow them not to face the "heavy burden” of a lump-sum award (see, Insuring Our Future, Report of Governor’s Advisory Commn on Liab Ins, at 156-158 [Apr. 7, 1986]). Indeed, as noted in this very case, article 50-B "was intended to maintain the moderate cost of liability insurance premiums” (Doe v State of New York, 189 AD2d 199, 209). To interpret the phrase "in a timely fashion” in so extreme a way as to accelerate in excess of $3,000,000 in payments for a delay so clearly de minimis, in relation to the structured award these claimants have already received and are going to receive, would restore the very result that articles 50-A and 50-B were created by the Legislature to avoid. Such a declaration, on these facts, would be arbitrary and irrational and would be made without taking the context of the article into consideration.
Indeed, the payment in issue must be assessed within the structure of the payment of the judgment itself. Claimants complain that this payment for $43,471.12 arrived on July 7 rather than July 1, yet they had been mailed checks for $585,950.11 on June 28, and they could pick up a check in excess of one third of $1,000,000 from the Oneida County Clerk as soon as the second amended judgment and order was filed on June 7. Clearly, this defendant has satisfied the time limitations imposed by article 50-B in this course of payment *88 and an assertion that the $43,471.12 payment was not made "in a timely fashion” is a mischaracterization of reality.
Because the Legislature has stated the creditor’s application can be made when such a failure occurs "for any reason” (CPLR 5044), it cannot be gainsaid that the defendant’s excuse for a delayed payment is irrelevant as to whether the petitioner is empowered to seek acceleration. It does not follow, however, that the Legislature intended the court to act without reason. Clearly, a determination as to whether a payment is made in timely fashion in accordance with the article permits us to view the payment in the context in which it was made, including consideration of the judgment debtor’s efforts to fully comply with article 50-B. If we have judgment at all in assessing whether a payment is made in a "timely fashion”, we must assess all the characteristics of the timing of the payment. If the matter were one simply requiring a determination of proof of timing of the payment, the Legislature could have directed such application go to the clerk (see, e.g., CPLR 3215 [a]), not the Judge who tried the matter (CPLR 5044).
Beyond that, it readily appears that the interpretation proffered by claimants, that the judgment debtor is strictly liable for a payment of a lump sum which is, if anything, in excess of the creditor’s actual damages as found by the court at trial, would impose an unprecedented burden on judgment debtors. Those few annuity companies which would venture to assume the responsibility of making such payments would obviously be of the sort willing to take risks that leave the security of the judgment creditor’s ultimate recovery in some doubt. If the draconian interpretation claimants assert were to win the day, structured judgments would no longer be an affordable solution to a debt because they would be fraught with irrational dangers for insurers. Here, for example, the undisputed evidence is that claimants would garner in excess of $3,000,000 in present-day dollars, a figure which far outweighs the actual harm which this court and the Appellate Division have determined equals fair compensation to the claimants for their future injuries. Such a result, for the conduct in issue, is clearly not a rational one and was not intended.
Article 50-B’s employment of structured judgments was intended to make fair compensation to judgment creditors available in an affordable way. When properly applied, article 50-B provides "a useful mechanism for ameliorating the bur *89 den of tort liability for defendants and their insurers without reducing the compensation to which plaintiffs are entitled” (Insuring Our Future, Report of Governor’s Advisory Commn on Liab Ins, at 158). The article further clearly contemplates that qualified insurance companies issue and make the periodic payments arising under CPLR article 50-B (see, e.g., CPLR 5042). It was claimants’ burden to establish the periodic payment they received on July 7 was not made "in a timely fashion”. Nothing in this record indicates that this payment was in any way violative of the custom and practice of the insurance industry. The "fashion” of the insurance industry was not presented by claimants at all and nothing in this legislation indicates anything other than the routine, standard payment method of insurers was to be imposed upon insurers securing debts under this article.
This is not to say that a payment arriving six days after the beginning of the month would never be violative of CPLR 5044. Rather, in each instance the court will be required to exercise reasoned judgment as to whether the payment was made in a timely fashion. Here, in the context presented and where the second amended judgment in no way indicates time is of the essence, we find that this payment was made in a timely fashion within the meaning of CPLR 5044. The motion is therefore denied.

 Edited portions of the trial decision appear at 155 Misc 2d 286.