Richard DAMIANO, Plaintiff,

v.

EXIDE CORPORATION, Defendant.

No. 92 Civ. 1395(LBS).

United States District Court, S.D. New York.

June 24, 1997.

Robert T. Wolf, Bronx, NY, Pryor, Cashman, Sherman & Flynn, New York City (Joseph Z. Epstein, of counsel), for Plaintiff.

Ahmuty, Demers & McManus, Albertson, NY (Edward G. Lukoski, of counsel), for Defendant.

## OPINION & ORDER

SAND, District Judge.

The matter before the Court entails conflicting views concerning how N.Y.C.P.L.R. Article 50–B should be applied to determine the sum of money ultimately to be paid to a plaintiff for future damages, an issue which has divided the lower courts and has not yet been definitively resolved by the New York Court of Appeals.

Plaintiff Richard Damiano ("Damiano") moves pursuant to Federal Rule of Civil Procedure 60(b) and C.P.L.R. § 5044 for an order modifying the August 12, 1996 judgment (the "Judgment") issued in this case. Defendant Exide Corporation ("Exide") moves pursuant to Rule 60(b) for an order requiring Plaintiff to provide a satisfaction of judgment or, alternatively, an order modifying the Judgment with regard to future lost wages. For the reasons set forth below, we agree with Plaintiff that Defendant's payments to date have been less than what is required under C.P.L.R. Article 50–B, and we thus order the Judgment modified to require an additional lump–sum payment representing the amount by which Defendant's payments to date have been deficient. We further order Defendant to provide an annuity which will properly implement the verdict. Defendant's motion is denied in its entirety.

## I.

## BACKGROUND

Following a March 1996 trial on Damiano's product liability claims, a jury rendered an itemized verdict in favor of Damiano in the total amount of $2,970,000—$770,000 in past damages and $2,200,000 in future damages.[1] Judgment was entered on August 12, 1996. In accordance with section 5041 of Article 50–B, the Judgment provided for a lump–sum payment of $770,000 for the past damages, and a lump–sum payment covering the first $250,000 of the future damages. Also in accordance with section 5041, the remaining future damage amount of $1,950,000 (after deduction of the $250,000) was reduced to a present value of $1,461,241, representing the present value of an annuity contract which would provide for payment of the remaining future damages in periodic installments.

The motions now before the Court arise from a dispute between the parties as to the periodic payments which Damiano is to receive in satisfaction of the remaining future damages in excess of $250,000. Damiano contends that the annuity contract purchased by Exide provides for total payments over time which will be significantly less than the amount which Damiano is entitled to receive under Article 50–B. Exide contends that its payments are in full compliance with Article 50–B, and in addition, Exide seeks a modification of the Judgment to set off benefits received by Damiano from collateral sources. As is more fully set forth below, we rule in favor of Damiano with respect to both issues.

## II.

## DISCUSSION

### A. C.P.L.R. Article 50–B

Article 50–B governs the entry of judgment upon a verdict in an action to recover damages for personal injury, property damage, or wrongful death. The heart of Article 50–B is section 5041, which provides a step–by–step procedure for calculating the elements of such a judgment. The New York Court of Appeals has summarized section 5041 as follows:

> Though the statutory scheme of article 50–B is technical and complicated, its basic operation is easily stated. Past damages are paid in a lump sum (CPLR 5041[b]). Future damages, which are awarded by the jury without reduction to present value (CPLR 4111[f]), are bifurcated for purposes of article 50–B. The first $250,000 is paid as a lump sum (CPLR 5041[b]). The remainder, after the subtraction of attor-

---

1. The $2,200,000 future damage award was broken down as follows: 1) $50,000 over 25 years for physical injury; 2) $75,000 over 10 years for pain and suffering; 3) $2,000,000 over 18 years for loss of earnings; and 4) $75,000 over 25 years for medical expenses.

ney's fees and other adjustments, is to be paid in periodic installments (CPLR 5041[e]). To provide for these periodic payments, subdivision (e) further specifies that defendants are to purchase an annuity contract.

*Rohring v. City of Niagara Falls*, 84 N.Y.2d 60, 614 N.Y.S.2d 714, 715, 638 N.E.2d 62, 63 (1994). Though section 5041 can be summarized easily, New York courts have struggled with the details of its application. *See Singletary v. Three City Centre*, 158 Misc.2d 841, 601 N.Y.S.2d 649, 650 (Sup.Ct.1993) (describing Article 50–B as "every Judge's nightmare").

The initial steps in the application of section 5041 are not disputed by the parties. First, after applying any applicable setoffs or credits, the court shall enter judgment in a lump sum for all past damages. *See* § 5041(b). Next, the court shall enter judgment in a lump sum for the first $250,000 in future damages. *See id.* The statute then provides for payment of the plaintiff's attorney's fees—fees related to past damages, and fees related to the first $250,000 in future damages, are to be paid in lump sums to the attorney. *See* § 5041(c).

The next step is to determine the present value of the remaining future damages in excess of $250,000. *See* § 5041(e). (These remaining future damages in excess of $250,-000, prior to their reduction to present value, shall be referred to as the "gross future damages"). The court shall enter judgment for the amount of the present value of an annuity contract "that will provide for the payment of the remaining amounts of future damages in periodic installments." *Id.* Following the reduction of the gross future damages to present value, the court must also determine the attorney's fee related to the gross future damages. Section 5041(c) provides that this attorney's fee shall be payable in a lump sum (just as attorney's fees related

to past damages and the first $250,000 in future damages are payable in lump sums). Section 5041(c) provides that such lump sum shall be "based on the present value of the annuity contract purchased to provide payment of such future periodically paid damages pursuant to subdivision (e) of this section." The New York Court of Appeals has concluded that the proper procedure for calculating this attorney's fee is to determine the present value of the gross future damages, and then deduct from that amount the present value of the attorney's fee. *See Rohring*, 614 N.Y.S.2d at 715–16, 638 N.E.2d at 63–64.[2]

Applying all of the aforementioned steps to the *Damiano* Judgment yields the following. As stated, the $770,000 past damage award, and $250,000 of the $2,200,000 future damage award, were set forth in the Judgment as lump sums, in accordance with section 5041(b). This left a gross future damage amount of $1,950,000. Pursuant to *Rohring*, this gross amount was reduced to a present value of $1,461,241 in the Judgment. Under *Rohring*, this present value figure must be reduced by the present value of Damiano's attorney's fee, which is the standard one-third, *see* Epstein Decl. Dated Mar. 14, 1997 ¶ 2. Thus, Damiano's attorney should receive a lump–sum payment of $487,080.33 (one-third of $1,461,241), representing the attorney's fee related to the gross future damages. This leaves a present value remainder of $974,160.67 ($1,461,241 minus $487,-080.33).[3]

We now reach the point of disagreement between the parties. *Rohring* leaves an area of uncertainty regarding the amount of the periodic payments to be made to the plaintiff to cover the remaining future damages. Damiano contends that this $974,160.67 present value remainder should represent the present value of an annuity contract which will,

**2.** The Court of Appeals in *Rohring* provided a hypothetical to illustrate the procedure for calculating the attorney's fee related to gross future damages. *See Rohring*, 614 N.Y.S.2d at 716 n. 2, 638 N.E.2d at 64 n. 2. The court assumed a gross future damage award of $1,000,000, with a 10% discount rate and a one–third attorney's fee. *See id.* The court then reduced the $1,000,000 to a present value of $900,000, and deducted $300,-

000 (one–third of $900,000) for the attorney's fee. *See id.*

**3.** This Opinion will contain several mathematical calculations. Some of these calculations may contain small variances due to rounding out of figures.

over time, pay him an amount equalling two–thirds of the *gross* future damages. Thus, under the approach suggested by Damiano, the attorney receives one–third of the *present value* of the gross future damages (one–third of $1,461,241, which equals $487,-080.33)—a logical result, because section 5041(c) requires that the attorney receive his or her fee *immediately*—while Damiano himself will receive over time an amount equalling two–thirds of the *gross* future damages (two-thirds of $1,950,000, which equals $1,300,000)—also a logical result, because section 5041(e) requires that the plaintiff receive payments *over time.*

Exide has not been making such payments, however. Damiano states (without contradiction by Exide) that the annuity purchased by Exide will provide the following payments over time (not including the requisite 4% interest which is to be added to the periodic payments pursuant to section 5041(e)):

$69 per month for 25 years
$308 per month for 10 years
$4,132 per month for 18 years
$103 per month for 25 years

TOTAL OVER TIME: $981,072

As can be seen, such a payment schedule will give Damiano a total amount over time which equals about two–thirds of the *present value* of the gross future damages (two–thirds of $1,461,241 is $974,160.67). Damiano contends that this constitutes an unfair "double discount," because Exide has taken an amount which is *already* discounted to present value ($1,461,241) and attempted to pay Damiano two–thirds of that amount over time.

■ Case law is in conflict concerning the periodic payments to be made after deduction of the attorney's fee. Several courts, led by Justice Gammerman of the Supreme Court, have adopted the approach suggested by Damiano. In *Petrides v. Goodgold,* 170 Misc.2d 770, 655 N.Y.S.2d 702 (Sup.Ct.1995),[4] Justice Gammerman indicated that the proper procedure for calculating the periodic payments to be made to the plaintiff is to deduct

the *gross (future) value* of the attorney's fee from the *gross* future damage award, with the remaining amount to be paid to the plaintiff over time. *See id.,* 655 N.Y.S.2d at 704–05. The gross future damage award should then be reduced to present value for purposes of determining the present value of the attorney's share, which is to be paid immediately. *See id.* at 705. More recently, Justice Gammerman has affirmatively stated that it would be improper to calculate the periodic payments by dividing the *present value* of the gross future damage award by the number of years over which payments are to be made—in Justice Gammerman's view, such a method involves "discounting twice," because a figure which has already been discounted to present value is paid out over time. *See Taromina v. Presbyterian Hosp.,* 171 Misc.2d 618, 655 N.Y.S.2d 315, 316 (Sup.Ct. 1997). Other courts have followed Justice Gammerman's approach, including Judge Sweet of this Court, *see In re New York Asbestos Litig.,* 847 F.Supp. 1086, 1114 (S.D.N.Y.1994) (stating that "[t]he future value of the attorney's fee must be subtracted from the future value of the damages award to obtain the sum to be paid through future periodic payments to the plaintiffs."), *aff'd in part sub nom.* 72 F.3d 1003 (2d Cir.1995), *and vacated,* —— U.S. ——, 116 S.Ct. 2576, 135 L.Ed.2d 1091 (1996), and Justice Stander of the Supreme Court, *see Singletary,* 601 N.Y.S.2d at 650–54.

The *Singletary* decision is highly illustrative because it indicates that the proper result can be reached by performing the calculation from either of two directions. Using a hypothetical gross future damage award of $60,000 and an attorney's share of one–third, Justice Stander first set out the calculation as follows: 1) take the *future value* of the attorney's fee (one–third of $60,000, which equals $20,000) and convert that amount to present value (Justice Stander assumed the present value of $20,000 to be $15,000)—this $15,000 sum is to be paid immediately to the plaintiff's attorney; then 2) deduct the *future*

---

**4.** *Petrides* dealt with Article 50–A of the C.P.L.R., which is applicable to medical malpractice actions. *See Petrides,* 655 N.Y.S.2d at 703. Because section 5031 of Article 50–A contains the same language as section 5041 of Article 50–B, Article 50–A cases will also be cited in this Opinion.

*value* of the attorney's fee ($20,000) from the *gross* future damage award ($60,000), which leaves $40,000, and then 3) pay the resulting $40,000 amount to the plaintiff over time. *See id.*, 601 N.Y.S.2d at 654. Justice Stander then set out the calculation from the other direction: 1) reduce the gross future damage award ($60,000) to present value (Justice Stander assumed the present value of $60,-000 to be $45,000), and take one–third of that amount ($15,000) for immediate payment to the plaintiff's attorney; then 2) deduct this $15,000 attorney's share from the $45,000 present value, leaving a $30,000 remainder; and then 3) *reconvert* this $30,000 to *future value* to determine the amount to be paid to the plaintiff over time (based on Justice Stander's assumptions, the future value of $30,000 is $40,000). *See id.* at 653 n. 4. Hence, the result is the same from either direction—plaintiff's attorney receives an immediate payment of $15,000, equal to one–third of the *present value* of the gross future damage award (one–third of $45,000), and plaintiff receives a total of $40,000 over time, equal to two–thirds of the *gross* future damage award (two–thirds of $60,000).[5]

By contrast, two courts have adopted the "double discounting" method which Justice Gammerman has rejected. In *Silvestri v. Smallberg*, 165 Misc.2d 827, 630 N.Y.S.2d 639 (Sup.Ct.1995), *aff'd*, 88 N.Y.2d 1004, 648 N.Y.S.2d 870, 671 N.E.2d 1267 (1996),[6] the court proceeded by reducing the gross future damage award to present value and then deducting the attorney's share; then, the court calculated the periodic payments by dividing the remainder by the number of years for which payments were to be made. *See id.*, 630 N.Y.S.2d at 643–44. Thus, the court awarded the plaintiff a total amount of payments over time which would equal only the *present value* of the gross future dam-

ages, minus the attorney's share.[7] More recently, Judge Baer of this Court has followed *Silvestri*. *See Alvarez–Icaza v. Cartier, Inc.*, 920 F.Supp. 449, 451–53 (S.D.N.Y.1996).

We conclude that Justice Gammerman's approach is proper. Although the Court of Appeals in *Rohring* held that the attorney's share is to be determined based on the present value of the gross future damage award, this does not mean that the payments to be made to the plaintiff over time should only total that present value. Rather, since the plaintiff is being paid over time, it is appropriate to base the periodic payments on the gross future damage amount rather than the present value. The approach of *Silvestri* and *Alvarez–Icaza* undercompensates the plaintiff by taking a present value figure and paying that figure out over a period of time.

A close reading of the decision of the Court of Appeals in *Rohring* reveals that the method which we now adopt is the one in fact sanctioned by that court. In a footnote, the Court of Appeals in *Rohring* presented a hypothetical with a gross future damage award of $1,000,000, a present value of $900,-000, and a one–third attorney's fee (*see supra* note 2), and stated that, once all calculations are complete, "[t]he plaintiff is, of course, entitled to either $1,000,000 in gross damages or $900,000 in present value damages." *Rohring*, 614 N.Y.S.2d at 716 n. 2, 638 N.E.2d at 64 n. 2. Applying Justice Gammerman's method to the Rohring hypothetical yields a result which accords with this admonition. The plaintiff's attorney would receive one–third of the $900,000 present value, and the plaintiff would receive two–thirds of the $1,000,000 gross value over time—a total of $666,666.67.[8] Using the discount rate provided in the hypothetical, $666,666.67 has a

---

5.  We note that it would never be proper to deduct the *present value* of the attorney's fee from the *gross* future damage award. *See Rohring*, 614 N.Y.S.2d 714, 638 N.E.2d at 63–64.

6.  The precise issue which we address today was not preserved for appeal in *Silvestri*.

7.  As can be seen from the Silvestri opinion, the court deducted $152,164.29 in attorney's fees from the $827,051 present value of the gross future damage award, leaving a present value

remainder of $674,886.71. The court then provided for yearly payments which would total $674,886.71 over time (exclusive of section 5041(e) 4% interest). *See Silvestri*, 630 N.Y.S.2d at 644.

8.  This figure ($666,666.67) can be arrived at by deducting the future value of the attorney's fee (one–third of $1,000,000, which equals $333,-333.33) from the gross future damage amount of $1,000,000.

present value of $600,000. Thus, the plaintiff (and his attorney) would receive a sum of money having a total present value of $900,000 ($300,000 plus $600,000). This is exactly what the above–quoted statement from the Court of Appeals requires.

In addition, a close examination of the Appellate Division decision in *Rohring*—which the Court of Appeals affirmed—reveals that the Appellate Division in fact employed the same method as that adopted by Justice Gammerman. As set forth in the Appellate Division opinion, the gross future damages in Rohring totalled $1,976,000, which had a present value of $1,272,979. *See Rohring v. City of Niagara Falls*, 192 A.D.2d 228, 601 N.Y.S.2d 740, 743 (1993), *aff'd*, 84 N.Y.2d 60, 614 N.Y.S.2d 714, 638 N.E.2d 62 (1994). The Appellate Division set aside $424,326.27 (one–third of $1,272,979) for the attorney's fee, leaving a present value remainder of $848,652.54. *See id.* The Appellate Division then set forth the following periodic payments to be made to the plaintiff: 1) $6,146 per year for 35 years (medical expenses); 2) $37,875 per year for 25 years (lost wages); 3) $11,837 per year for 10 years (pain and suffering); 4) $296 per year for 25 years (wood); 5) $1,183 per year for 25 years (household services). *See id.* Adding these numbers, the total amount to be received by the *Rohring* plaintiff over time, according to the payment schedule set out by the Appellate Division, equalled $1,317,330 (exclusive of the requisite 4% interest under section

5041(e)). This figure equals two–thirds of the *gross* future damage award (two–thirds of $1,976,000 equals $1,317,333.33). The Appellate Division thus avoided the "double discounting" which would have resulted if the periodic payments were to have totalled only the present value remainder of $848,652.54.

We now apply Justice Gammerman's method to the *Damiano* Judgment. As mentioned, the gross future damage award (after deduction of $250,000) was $1,950,000, which had a present value of $1,461,241, as set forth in the Judgment. Pursuant to *Rohring*, one–third of this present value, or $487,080.33, is set aside for Damiano's attorney. Following this approach, Damiano is to receive payments over time which will total two–thirds of the *gross* future damage award—hence, Damiano is to receive $1,300,000 (two–thirds of $1,950,000) over time, plus the requisite 4% interest as set forth in section 5041(e).[9]

As discussed, the annuity which Exide has purchased will provide only a total of $981,072 over time (exclusive of the requisite 4% interest under section 5041(e)). Accordingly, we conclude that the payments made since entry of the Judgment do not comply with Article 50–B.

We must now determine the consequences of Exide's failure to comply. Section 5044 of Article 50–B provides as follows:

> If at any time following entry of judgment, a judgment debtor fails for any reason to

---

9. As noted by Justice Stander in *Singletary*, the calculation can be performed from two directions, either of which yields the same result. From the first direction, we do the following: 1) take the future value of the attorney's fee (one–third of $1,950,000, which equals $650,000), and convert that to present value to determine the attorney's lump sum payment (based on the figures presented in the Judgment, the present value of $650,000 is $487,080.33); then 2) subtract the future value of the attorney's fee ($650,000) from the gross future damage award ($1,950,000), which yields $1,300,000; and then 3) pay $1,300,000 to Damiano over time. *See Singletary*, 601 N.Y.S.2d at 654. From the second direction, we do the following: 1) take the pres-

ent value of the gross future damage award (which equals $1,461,241) and set aside one–third ($487,080.33) for immediate payment to Damiano's attorney; then 2) deduct the attorney's fee ($487,080.33) from the total present value ($1,461,241), which yields a remainder of $974,160.67; and then 3) reconvert this remainder to future value to yield the amount to be paid to Damiano over time (the future value of $974,160.67 is $1,300,000). *See id.* at 653 n. 4.

The calculations can be expressed as follows, with Exide actually paying the one–third present value share ($487,080.33) to Damiano's attorney in a lump sum, and the two–thirds gross value share ($1,300,000) to Damiano over time (these figures are marked with *): ·

| | Present Value | Gross (future) Value |
|---|---|---|
| Attorney | *$ 487,080.33 (1/3) | $ 650,000 (1/3) |
| Damiano | $ 974,160.67 (2/3) | *$1,300,000 (2/3) |
| [Total]: | $1,461,241 | $1,950,000 |

make a payment in a timely fashion according to the terms of this article, the judgment creditor may petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum. In calculating the amount of the lump sum judgment, the court shall total the remaining periodic payments due and owing to the judgment creditor ... and shall not convert these amounts to their present value. The court may also require the payment of interest on the outstanding judgment.

■ Damiano asks this Court to invoke section 5044 to require an immediate lump–sum payment, without reduction to present value, of the entire $1,300,000 gross future damage amount, minus those payments which have already been made to Damiano since entry of the Judgment in August 1996. According to Damiano's papers, Damiano has received payments totalling $23,060 through February 1997. Thus, Damiano seeks an order amending the Judgment to require an immediate lump–sum payment of $1,276,940 ($1,300,000 minus $23,060). We decline to grant such drastic relief.

Section 5044 was clearly intended to penalize defendants who fail to fulfill their obligations under a judgment. Though Exide's payments thus far have been less than what is required under this Court's interpretation of Article 50–B, we must recognize that the payment method used by Exide has been adopted by some courts, *see Silvestri* and *Alvarez–Icaza, supra,* and that the proper application of Article 50–B has been a matter of judicial uncertainty. Awarding an immediate lump–sum payment of $1,276,940 without reduction to present value would serve to overcompensate Damiano in relation to the severity of Exide's noncompliance with Article 50–B.

One court has indicated that equitable considerations should be employed to avoid an unduly severe remedy under section 5044. *See Doe v. State,* 159 Misc.2d 83, 602 N.Y.S.2d 990, 992–93 (Ct.Cl.1993). In *Doe,* the defendant submitted a single periodic payment six days late. *See id.,* 602 N.Y.S.2d at 990. The plaintiff sought to invoke section

5044 to require an immediate lump–sum payment of the entire gross future damage amount without reduction to present value— a total penalty of $3,129,420. *See id.* at 991. The court, disturbed by the prospect of such a "draconian" penalty for a single late payment, concluded that courts should have some equitable discretion in determining whether a payment has been made in a "timely fashion" within the meaning of section 5044, and thus denied the relief sought. *See id.* at 992–93. Following the reasoning of *Doe,* we similarly conclude that section 5044 should not be applied literally in this case.

Rather, we conclude that the proper remedy in light of the level of Exide's noncompliance with Article 50–B is to require Exide to make an immediate lump–sum payment representing the amount by which its payments to date have been deficient. Thus, we order the Judgment amended to include a lump–sum payment representing the difference between the total amount which was actually paid from August 1996 to the present time and the total amount which would have been paid during that period if the payment schedule were based on the proper total payment amount as set forth in this Opinion (that is, a total payment amount of $1,300,000 plus the requisite 4% interest as set forth in section 5041(e)). The amended judgment shall also include interest on this lump–sum.

We further order that Exide provide an annuity which will make payments over time in accordance with this Opinion—that is, payments over time totalling $1,300,000, plus the requisite 4% interest as set forth in section 5041(e). If Exide fails to comply with such order, Damiano may again petition this Court for appropriate relief under section 5044.

### B. *Collateral Source Payments*

Exide requests that the Judgment be modified to set off monies currently being received by Damiano in the form of Social Security disability benefits and benefits from Damiano's former employer. Exide seeks such relief under C.P.L.R. § 4545(c), which provides in pertinent part:

In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source ... If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits. . . .

We conclude that Exide's request, made long after trial and entry of judgment, has come too late.

█ The burden is on the defendant to prove that a plaintiff's award should be reduced by payments received from collateral sources. *See Adamy v. Ziriakus*, 231 A.D.2d 80, ——, 659 N.Y.S.2d 623, 626 (1997); Vincent C. Alexander, Practice Commentaries to Section 4545, Commentary C4545:3 (1992) [hereinafter "Practice Commentary C4545:3"]. Courts have permitted defendants to acquire information on collateral source payments in pretrial discovery. *See, e.g., Eaton v. Chahal*, 146 Misc.2d 977, 553 N.Y.S.2d 642, 646 (Sup.Ct.1990); *see also* Practice Commentary C4545:3. Typically, the issue of reduction for collateral source payments is then reserved for a post-trial evidentiary hearing. *See* Practice Commentary C4545:3.

█ Exide claims that, in conducting research into the Article 50–B issue, it "learned" that this Court "should have" set off Damiano's disability benefits, and thus requests that Damiano supply information as to the amounts of those benefits. *See* Lukoski Affirm. Dated Jan. 23, 1997 at 3. However, as the above authorities indicate, Exide should have inquired into the existence of collateral source payments in pretrial discovery, and should have requested a post–trial hearing at which it would have borne the

burden of establishing that such payments should be set off from the jury's award. The authorities indicate that a defendant who fails to request a collateral source hearing or fails to present proof of collateral source payments waives his right to claim a set–off under section 4545. *See Bailey v. State*, 199 A.D.2d 857, 606 N.Y.S.2d 362, 363 (1993) (declining to address collateral source issue on appeal where defendant failed to pursue the issue before the trial court); *Virkler v. Shockney*, 178 A.D.2d 966, 578 N.Y.S.2d 325, 326 (1991) (holding that collateral source issue was not preserved for review where defendant failed to address the issue in post–trial submissions and failed to request a hearing before the trial court); *Hill v. Muchow*, 178 A.D.2d 954, 579 N.Y.S.2d 254, 255 (1991) (holding that trial court did not err in declining to reduce jury award where defendant failed to submit evidence of collateral source payments); *see also* Practice Commentary C4545:3 (stating that "the defendant should explicitly demand a hearing [on collateral source payments], lest the right be waived."). Exide filed a post–trial motion to set aside the verdict in March 1996, but Exide's papers in connection with that motion did not raise the collateral source issue. Nor can Exide claim that it was unaware of the issue—Damiano's testimony at the trial alluded to disability benefits. *See* Lukoski Affirm. Dated Jan. 23, 1997 Exs. B & C.

We thus conclude that Exide has waived its right to seek a set–off under section 4545.

### III.

### CONCLUSION

For the above reasons, Plaintiff's request to amend the Judgment is granted as set forth in this Opinion, and Defendant's motion is denied in its entirety.

The Court hereby orders the following:

1) Plaintiff is to submit an amended judgment in accordance with this Opinion. Such amended judgment shall include a lump–sum payment representing the difference between the total amount of the payments made to Plaintiff from August 1996 to date and the total amount of the payments which should

have been made during this period. The amended judgment shall also include interest on this lump–sum.

2) Defendant is to provide an annuity which will yield a stream of payments to Plaintiff over time which will total $1,300,000, plus the requisite 4% interest mandated by section 5041(e).

SO ORDERED.