OPINION OF THE COURT
Mary Ann Brigantti, J.
On remittal from the Appellate Division, First Department, the plaintiff Shelton Stewart cross-moves for (1) acceleration of *613 the further amended judgment entered in this matter, with interest, and (2) the imposition of sanctions, costs, and attorney’s fees against the defendant, New York City Transit Authority. The defendant opposes the cross motion.
I. Background
The issue presented to the court is whether the plaintiff/claimant is entitled to acceleration of all future annuity payments from the defendant, under CPLR 5044, representing the future damages portion of a judgment the plaintiff obtained against the defendant after a jury trial. On December 19, 2007, a jury returned a verdict in this slip and fall personal injury action in favor of the plaintiff against the defendant. On May 7, 2009, a judgment was entered against the defendant as follows:
$2,000,000 for past pain and suffering;
$400,000 for past loss of earnings;
$2,700,000 for future pain and suffering, 20 years;
$1,300,000 for future medical expenses, 20 years; and
$900,000 for future loss of earnings, 20 years.
The jury apportioned liability 80% to the defendant and 20% to the plaintiff. The defendant appealed both the liability and damages portions of the verdict. On March 3, 2011, the Appellate Division, First Department, affirmed the liability portion of the verdict, but modified the damages award (82 AD3d 438). This resulted in an amended judgment that was entered on May 5, 2011. On October 13, 2011, the Court of Appeals refused to alter the amended judgment (17 NY3d 712). As a result, a further amended judgment was entered on December 16, 2011. This further amended judgment contained the exact same terms as the original amended judgment, but included additional costs and interest. The further amended judgment awarded plaintiff the following damages:
$2,000,000 for past pain and suffering;
$360,000 for past loss of earnings;
$365,000 for medical expenses;
$665,000 for future medical expenses, 20 years;
$2,700,000 for future pain and suffering, 20 years; and
$337,500 for future loss of earnings, 7.5 years.
After accounting for the plaintiff’s 20% share in liability, the total past damages awarded was $2,180,000. The total future *614 damages awarded to the plaintiff was $2,962,000, for a total damages award of $5,142,000, excluding costs and interest. The December 16, 2011 further amended judgment was entered pursuant to CPLR article 50-B, which required the defendant to make a lump-sum payment for all past amounts due and the first $250,000 of future damages owed, and to commence periodic payments to the plaintiff for all future damages in excess of $250,000. The defendant thereafter issued two checks to the plaintiff’s counsel’s office dated December 27, 2011, and received on January 2, 2012. One check was issued to plaintiff’s counsel in the amount of $1,903,029.70. The other check was issued to “Shelton Stewart, c/o” plaintiff’s counsel, in the amount of $2,754,441.16. It is not disputed that, to date, the defendant has not made any periodic monthly payments to the plaintiff.
The plaintiff contends that the payments tendered by the defendant were untimely and inadequate. Plaintiff’s counsel nevertheless accepted the checks “under protest” as “partial payments.” After some time went by, plaintiff’s counsel threatened an execution of the judgment if the defendant did not make the required, allegedly overdue payments. Instead of commencing those payments, on or about February 8, 2012, the defendant filed an order to show cause seeking vacatur of the further amended judgment on the grounds that the attorney’s fee was erroneously set at an unlawful percentage. The plaintiff notes that this assertion would not have affected the total amount of the judgment owed by the defendant. The plaintiff/claimant opposed the order to show cause and made the instant cross motion seeking acceleration of the future periodic monthly payments, plus interest, pursuant to CPLR 5044, as well as sanctions against the defendant for frivolous motion practice and conduct pursuant to 22 NYCRR 130-1.1.
After a hearing as well as multiple conferences, the Supreme Court (Stanley Green, J.S.C.) granted the defendant’s motion to the extent of holding that plaintiff’s counsel was not entitled to the additional fee that he sought for prosecution of the appeal of this matter. By written order dated January 7, 2013, both sides were directed to submit judgments for consideration by the court. Plaintiff’s counsel thereafter appealed this ruling. In a 3-2 decision rendered on December 30, 2014, the Appellate Division, First Department, reversed the decision by the lower court, determining that plaintiff’s additional attorney’s fee arrangement with his lawyers was appropriate (125 AD3d 129). *615 The Appellate Division remanded the matter back to the Supreme Court to make a determination on the plaintiff’s cross motion for acceleration of all future periodic payments due the plaintiff, and for sanctions. After Justice Green recused himself, the cross motion was referred to this court.
II. Applicable Law and Analysis
The Court of Appeals has noted that while
“the statutory scheme of [CPLR] article 50-B is technical and complicated, its basic operation is easily stated. Past damages are paid in a lump sum (CPLR 5041 [b]). Future damages, which are awarded by the jury without reduction to present value (CPLR 4111 [f]), are bifurcated for purposes of article 50-B. The first $250,000 is paid as a lump sum (CPLR 5041 [b]). The remainder, after the subtraction of attorney’s fees and other adjustments, is to be paid in periodic installments (CPLR 5041 [e]). To provide for these periodic payments, subdivision (e) further specifies that defendants are to purchase an annuity contract” (Rohring v City of Niagara Falls, 84 NY2d 60, 66 [1994]).
CPLR 5042 specifies that security authorized or required for the payment of a judgment in periodic installments must be in the form of an annuity contract, “executed by a qualified insurer and approved by the superintendent of financial services pursuant to section five thousand forty-nine of this article, and approved by the court.” Importantly, for the purposes of this motion, CPLR 5043 provides specific timing requirements for a defendant or defendants who must post and maintain security in order to secure payment of future periodic installments. The statute states that “each party liable for all or a portion of such judgment shall separately or jointly with one or more others post security in an amount necessary to secure payment for the amount of the judgment for future periodic installments within thirty days after the date the judgment is entered.” (CPLR 5043 [a] [emphasis supplied].) If a debtor fails to post the required security, under CPLR 5043 (b), a judgment creditor may move before a court to find that the required security has not been posted and maintained. Upon such a finding, the court shall order that security complying with this article be posted within 30 days. Finally, CPLR 5044 addresses a situation where a debtor fails to make a payment. It states:
“If at any time following entry of judgment, a judg *616 ment debtor fails for any reason to make a payment in a timely fashion according to the terms of this article, the judgment creditor may petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum. In calculating the amount of the lump sum judgment, the court shall total the remaining periodic payments due and owing to the judgment creditor, as calculated pursuant to subdivision (e) of section five thousand forty-one of this article, and shall not convert these amounts to their present value. The court may also require the payment of interest on the outstanding judgment.”
The issue presented to this court is whether the facts and circumstances surrounding this case warrant acceleration of the payment of all future periodic payments owed to the plaintiff, with interest, pursuant to CPLR 5044. The plaintiff contends that, on these facts, the court has little to no discretion as to acceleration. The defendant here had 30 days to make the initial required lump-sum payments to the plaintiff, and to purchase an annuity contract in order to commence all periodic monthly installments owed. The defendant, however, made an untimely and insufficient initial lump-sum payment, and never made any of the required periodic monthly payments or purchased an annuity contract as required by the statute. The plaintiff therefore urges that acceleration is appropriate and required.
In opposition, the defendant asserts that checks were issued for the full judgment amount to the plaintiff and his attorneys after the plaintiff served the further amended judgment on December 23, 2011. The checks included amounts to plaintiff and his attorney, as well as a check for the amount to be structured—issued to the structure company, Creative Capital, for the purchase of the required policies. After receiving the judgment, however, counsel states that he realized that the plaintiff’s attorney’s fees were set forth in excess of 40%, without explanation. Defendant’s counsel thereafter made the aforementioned order to show cause seeking vacatur of the judgment due to the allegedly erroneous attorney’s fee. Because defendant was concerned as to whether sufficient funds would exist should the court amend the judgment upon finding the contingency amount was incorrect, counsel instructed Creative Capital to hold onto the funds pending the court’s determina *617 tion. While the defendant’s order to show cause was pending, counsel for both parties conferenced the issues with Justice Green to discuss resolution of the contingency fee issue. At an October 24, 2012 conference, the matter was resolved to the extent that Justice Green permitted plaintiff’s counsel to receive $200,000 in additional fees beyond the standard one-third contingency fee, and that this amount would be paid to counsel from monies that were being held by the structure company, and the remainder would be structured as previously agreed to. Thereafter, defendant’s counsel alleges that no action was taken due to the effects of Hurricane Sandy on counsel’s office. On November 13, 2012, the parties were directed to appear for a further conference before Justice Green, and defendant’s counsel was not to make any payments. At the December 17, 2012 further conference and hearing, Justice Green informed the parties that he did not believe that plaintiff’s counsel was entitled to the fee as provided in the amended judgment, and therefore a new judgment must be entered. This directive was reduced to a written order dated January 7, 2013. As noted, supra, this order was appealed and eventually reversed by the Appellate Division.
At bottom, while the defendant apparently concedes that no annuity contract was purchased within 30 days of the December 2011 judgment, defendant argues that when considering the “convoluted history” pertaining to this matter, the defendant had a good faith belief that there was an error in the judgment and therefore acceleration is not appropriate. The defendant argues that, contrary to the plaintiff’s contentions, courts do have discretion in utilizing the provisions of CPLR 5044, and may examine the facts as to what actually occurred to determine whether payment was unreasonably withheld.
Both parties principally rely on Court of Claims decisions in support of their respective positions. The defendant relies on Doe v State of New York (159 Misc 2d 83 [Ct Cl 1993]). In Doe, the claimants obtained a money judgment against the defendant State of New York on June 30, 1992. An amended judgment structuring the award was entered on September 29, 1992. Both parties appealed the amended judgment. Pending the appeals, the defendant paid the claimants $3,000,000—a portion of the judgment. After resolution of the appeals, a new structured judgment was entered on June 7, 1993, providing for gross awards to each claimant in the amount of $5,035,700 and $1,000,000. Payment was to be partly made in lump sums *618 and partly made through periodic installments scheduled with various termination dates, but the first installment totaled $43,471.12. The amended judgment also provided, inter alia, that the county clerk was to pay claimants $360,044.05 that had been held from the $3,000,000 payment that had been made earlier. The judgment also directed the defendant to pay the claimants $501,585.24 in cash, representing 12 monthly payments due from July 1, 1992 through June 1, 1993, plus a per diem rate of interest on all previously unpaid amounts.
On June 15, 1993, the defendant contracted with Metropolitan Life Insurance Company to pay the future periodic installments owed. The defendant then paid the claimants $585,950.11 by checks mailed on June 28, 1993, representing the principal balance due and unpaid as of that date plus past periodic installments due, and interest. The annuity contracts (posted by the State and approved by the court pursuant to CPLR 5042) provided that Metropolitan would make the periodic payments payable under the judgment commencing July 1, 1993. Due to some administrative error, however, Metropolitan did not mail the initial monthly installment check of $43,471.12 to the claimants until July 6, 1993, and it was not received by the bank until July 7. The claimants, therefore, sought immediate payment of the gross amount of all outstanding periodic payments without reduction to present value, pursuant to CPLR 5044.
The court, after review of the pertinent legislative history of the statute, denied the motion. It found, pertinently, that article 50-B does not define what constitutes a failure to make a payment in a “timely fashion” pursuant to CPLR 5044, and further, makes no reference to a court’s discretion in fashioning a remedy when a petitioner has established a right to relief. Since CPLR 5044 states that a judgment creditor can seek acceleration when a payment is not timely paid “for any reason,” a defendant’s excuse for a delayed payment may be irrelevant. However, the court further held that the legislature did not intend for courts to act without reason, and in order to determine whether a payment is made in a timely fashion, a court must assess all characteristics of the payment timing and consider the debtor’s efforts to fully comply with article 50-B. “If the matter were one simply requiring a determination of proof of timing of the payment, the Legislature could have directed such application go to the clerk (see, e.g., CPLR 3215 [a]), not the Judge who tried the matter (CPLR 5044).” (Id. at *619 88.) The court in Doe went on to find that the de minimus six-day delay in tendering the periodic monthly installment to the claimants did not violate article 50-B, especially when considering the payments that the claimants had already received, and would receive in the near future. Moreover, the amended judgment did not indicate that time was of the essence.
The plaintiff in this matter relies primarily upon Uderitz v State of New York (173 Misc 2d 765 [Ct Cl 1997]) in support of his position that a court lacks discretion finding that acceleration is appropriate under CPLR 5044. In Uderitz, the claimants obtained a judgment against the defendant State of New York in 1995. The judgment was subsequently affirmed by the Appellate Division, and the Court of Appeals denied leave to appeal. On February 27, 1997, the defendant was served with a copy of the judgment and notified by the claimants that all appeals had been exhausted. In response to a request from the defendant, on March 14, 1997, the claimants provided a written breakdown of calculations of all payments due, with interest. The defendant, thereafter, did not respond or otherwise communicate with the claimants. On June 25, 1997, the claimants made a motion to accelerate all future payments due pursuant to CPLR 5044. The court in Uderitz, like in Doe, noted that the legislative history of the statute provided no guidance as to what constitutes the failure “to make a payment in a timely fashion.” Still, the court found, unlike in Doe, that the defendant did not post any annuity contract nor did it seek court approval of such a contract. Further, at the time the motion was heard, the defendant had yet to make any lump-sum payments for past damages or the first $250,000 of future damages. On those facts, where a judgment debt was owed, and no payment whatsoever was made, the court determined that the defendant failed to render payment in a “timely fashion” and therefore the claimants were entitled to an immediate payment of the full lump sum for future periodic payments, including interest thereon. In making this determination, the court reviewed the judgment debtor’s proposed reasons for the untimely payment, and rejected them:
“While the statute may be invoked when the failure to make payment is for any reason, here the reasons or excuses presented in court addressed supposed internal procedures at the insurance carrier for the defendant. Apparently disbursements above certain amounts of money needed ‘corporate’ *620 as opposed to local or regional approval, and at that needed the specific approval of the chief corporate counsel, who was involved with a takeover of Aetna, another insurance company. In other words, the defendant was too busy to make timely payment. While the statute provides a mechanism to assure compliance when payment is late for any reason, here the excuse is at best hardly compelling and at worst cavalier and insulting” (id. at 768).
Review of these two Court of Claims decisions does not definitely resolve the issue of whether a court has discretion to consider all of the circumstances before deciding that acceleration is warranted, as opposed to mechanistically granting acceleration by operation of law as soon as a timely payment is not made “for any reason.” The facts in both Doe and Uderitz are distinguishable from the case at bar and essentially represent two extremes on this issue. In Doe, the defendant had made a substantial partial payment on the judgment, including a deposit of some $3,000,000 held by the clerk, at the time the judgment was entered. Further, the Doe defendant purchased the required annuity contracts within weeks of the judgment and had them approved by the court. The alleged infraction in Doe occurred when the insurance company remitted its initial monthly periodic payment approximately six days late. When considering all facts and circumstances, the court found that this failure did not violate article 50-B and the claimants were not entitled to acceleration under CPLR 5044. In Uderitz, the defendant did not purchase the required annuity contracts and indeed made no payments whatsoever on the judgment until the claimants made their motion, some four months after the judgment was entered. Under those circumstances, the court found that the claimants were entitled to acceleration of all future payments. In both cases, notably, the courts engaged in some analysis as to the circumstances surrounding the judgment debtor’s alleged failure to make a timely payment.
There is limited appellate authority precisely on point; however, some decisions do provide guidance. In Summerville v City of New York (282 AD2d 519, 521 [2d Dept 2001], revd 97 NY2d 427 [2002]), the plaintiff obtained a judgment against the defendant after a jury trial. An amended judgment was eventually entered on July 6, 1999. On August 5, 1999, the defendant city moved before the Appellate Division for leave to appeal to the Court of Appeals from the amended judgment. By *621 order dated August 18, 1999, the motion was denied. By notice of motion dated September 23, 1999, the defendant moved in the Court of Appeals for leave to appeal from the amended judgment. That motion was denied by decision and order dated November 30, 1999. Meanwhile, the defendant had moved before the trial court for a discretionary stay of the amended judgment (CPLR 5519 [c]). By order dated December 10, 1999, the trial court denied the defendant’s motion and granted the plaintiffs motion for acceleration of the judgment pursuant to CPLR 5044. During this period, the defendant refused to comply with the terms of the amended judgment. On appeal, the defendant contended that its August 5, 1999 motion revived the automatic stay that had been in effect (pursuant to CPLR 5519 [e]) until July 12, 1999, some 25 days earlier. Since the defendant was without the benefit of a stay for only 25 days (July 12-Aug. 5), it did not fail to meet its legal obligations under CPLR 5043, which require the purchase of an annuity contract within 30 days after the expiration of the stay. Therefore, the defendant argued that the plaintiff was not entitled to acceleration under CPLR 5044. The Appellate Division, Second Department, disagreed, holding that the motions for leave to appeal to the Court of Appeals did not revive the prior automatic stay. Further, the Appellate Division rejected the defendant’s argument that any default on its part in making payments under the amended judgment was a “minor delinquency.” Citing both Uderitz and Doe, the Court held:
“Assuming that the failure of a judgment debtor to make timely payments in accordance with a structured judgment does not, by itself, warrant acceleration of the judgment pursuant to CPLR 5044, and that the Supreme Court, and this Court, have discretion to determine whether acceleration is warranted in light of the particular facts of each case (see, Uderitz v State of New York, 173 Misc 2d 765; cf., Doe v State of New York, 159 Misc 2d 83), under the circumstances here, the Supreme Court providently exercised its discretion in favor of acceleration. The City’s prolonged failure to comply with the amended judgment was not the result of excusable neglect, but rather part of a bad-faith effort to delay compliance for monetary advantage. Accordingly, acceleration of the judgment pursuant to CPLR 5044 was clearly warranted” (Summerville v City of New York, 282 AD2d 519, 521 [2d *622 Dept 2001], revd 97 NY2d 427 [2002]).
The Appellate Division decision was subsequently reversed by the Court of Appeals (Summerville v City of New York, 97 NY2d 427 [2002])- In so ruling, the Court held that the defendant indeed obtained a new automatic stay pursuant to CPLR 5519 (a) (1) when, on August 5, 1999, it moved before the Appellate Division for leave to appeal to the Court of Appeals. While that stay expired on August 28, the defendant thereafter obtained yet another stay some 26 days later on September 23, 1999, when it moved at the Court of Appeals for leave to appeal. That stay expired on December 8, 1999. Under those circumstances, the plaintiff was not entitled to acceleration of the judgment, which had been granted on December 10, 1999.
Important and relevant for purposes of the motion before this court, the Court of Appeals explained that untimeliness was never established under CPLR 5044. The Court noted that under CPLR 5043 (a), the defendant had 30 days from entry of the amended judgment to tender the annuity contract. However, due to the various stays obtained by the defendant, there was never a period of time in which a stay had lapsed for as much as 30 days, and therefore the defendant did not violate its statutory obligation (id. at 434). Further, the Court specifically held that while article 50-B requires the tender of an annuity contract within 30 days of the entry of a judgment, the statute provides no specific time frame for the tender of an initial lump-sum payment due under a structured judgment. Accordingly, “whether that payment is made ‘in a timely fashion’ will depend on the circumstances presented in a particular case” (id. at 435). The Court therefore specifically parsed out (1) judgment debtor’s obligations with respect to the initial lump-sum payment, as opposed to (2) its obligations to post and maintain security under CPLR 5043. The Court in Sum-merville further found that, in light of the relatively short period of time in which the defendant was obligated to make the initial lump-sum payment was not stayed, its failure to do so could not be held to be untimely as a matter of law.
A review of the foregoing case law leads to the conclusion that while courts may have some leeway in determining whether a judgment debtor has made initial payments in a “timely fashion,” there is considerably less, if any, discretion in excusing a debtor’s failure to comply with the clear requirement that it post and maintain security for the judgment in the form of an annuity contract within 30 days of entry of the *623 judgment, pursuant to CPLR 5043 (a). The judgment debtor in Doe complied with its CPLR 5043 obligations, as it purchased the required annuity contracts within 30 days of the judgment. The judgment debtor in Uderitz did not purchase the required annuity contracts within 30 days of the judgment. The judgment debtor in Summerville did not purchase the annuity contracts, but instead tolled its obligations to do so by obtaining a series of stays pursuant to CPLR 5519 after the amended judgment was entered. Similarly, in Motichka v Cody (5 AD3d 185 [1st Dept 2004]), the judgment debtor unilaterally decided to pay to plaintiff a lump-sum payment on the judgment instead of purchasing an annuity contract that the defendant was required to offer. The defendant did not purchase the annuity because its “current cost far exceeds the present value delineated in the judgment and would thus materially increase the overall value of the judgment” (id. at 186). The Appellate Division, First Department, affirmed the trial court’s decision to grant the plaintiff acceleration of the annuity payments, holding that the defendant’s explanation was “not a valid reason for unilaterally refusing to purchase the annuity,” and the Court perceived “no equitable considerations militating against acceleration of the annuity payments” (5 AD3d at 186). Again, while not specifically referencing CPLR 5043, this case emphasized the importance of a judgment debtor’s obligations to post and maintain security.
In this case, it is undisputed that the defendant failed to purchase an annuity contract in accordance with CPLR 5043 within 30 days after either the October 2011 denial of leave to appeal the amended judgment by the Court of Appeals, or the December 23, 2011 service of the further amended judgment. In fact, the defendant never purchased an annuity contract or offered a contract for court approval. Instead, after the expiration of 30 days, the defendant instructed its structure company to hold monies intended to purchase the annuity, and (on or about Feb. 8, 2012) filed an order to show cause to vacate the amended judgment. Even assuming that the order to show cause was made in good faith, the defendant provides no explanation on its present papers as to why it waited beyond 30 days after service of the amended judgment before taking any action on it. Again, while this court may exercise its discretion to find that the defendant’s initial lump-sum payments it made to the plaintiff and plaintiff’s counsel were made in a timely fashion, this court cannot excuse the defendant’s utter *624 failure to post and maintain security in compliance with. CPLR 5043 (a). The 30-day time limit is explicitly provided for in the statute, and the defendant has provided no controlling authority specifically recognizing an exception to that rule under these circumstances. On these facts, therefore, this court finds that the plaintiff is entitled to acceleration of all future annuity payments due under the amended judgment, without reduction to present value, and with interest, pursuant to CPLR 5044. Plaintiff is also entitled to all monthly payments for future damages that would have been made since the 2007 verdict, to the extent they have not already been paid (see e.g. Iazzetti v City of New York, 288 AD2d 127 [1st Dept 2001]). This court also notes that the defendant has not denied that plaintiff is entitled to interest on monies all owed.
The plaintiff, however, is not entitled to sanctions against the defendant in the form of attorney’s fees. The plaintiff is seeking such sanctions due to the defendant’s conduct in failing to make any payments to the plaintiff after the Appellate Division, First Department, rendered its December 30, 2014 decision (125 AD3d 129). Sanctionable conduct is (1) completely without legal merit and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law, (2) undertaken primarily to delay or prolong litigation or to harass or maliciously injure another, or (3) asserted material statements that were false (22 NYCRR 130-1.1 [a], [c]). In determining whether conduct was frivolous,
“the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party” (Tavella v Tavella, 25 AD3d 523, 524-525 [1st Dept 2006]).
In this case, it is understandable that the defendant took no action to tender payments to the plaintiff after the First Department rendered its decision, as the Appellate Division remanded the plaintiff’s cross motion back to the trial court for determination. Therefore, the defendant justifiably awaited this decision, when it would know how much money it was obligated to remit to the plaintiff. Further, the plaintiff appears to argue that the defendant should be sanctioned for making *625 its ultimately unsuccessful order to show cause seeking a determination that the agreed-upon contingency fee was improper. However, simply because a legal argument is ultimately found to be unpersuasive does not lead to the conclusion that the argument was frivolous (see W.J. Nolan & Co. v Daly, 170 AD2d 320 [1st Dept 1991]). The legal argument advanced by the defendant was accepted by a supreme court justice as well as two members of the Appellate Division panel. Further, it would be improper to impose sanctions in response to a party’s legal arguments that are made in good faith, even if they are not supported by existing law or statute (id. at 321). This court disagrees with the plaintiff’s contention that the defendant should be sanctioned because it failed to raise the issue of attorney’s fees in earlier appeals. Considering all of the circumstances here, including the fact that the defendant remitted a substantial payment to the plaintiff and his counsel shortly after the amended judgment was entered in December 2011, it cannot be said that the defendant’s conduct—either after that date, or after the Appellate Division rendered its December 30, 2014 decision—is sanctionable. Accordingly, that branch of the plaintiff’s cross motion is denied.